**Louis J. Esbin, Esq. (Cal. Bar No. 119705)** (SPACE BELOW FOR FILING STAMP ONLY)
**LAW OFFICES OF LOUIS J. ESBIN**
**25129 The Old Road, Ste. 114, Stevenson Ranch, California 91381**
**Tel: 661-254-5050 | Fax: 661-254-5252 | Email: Louis@Esbinlaw.com**

Attorneys for Debtor in Possession, BURNETT FAMILY FARMS, LLC

**Joseph M. Sholder, Esq. (Cal. Bar No. 126347)**
**GRIFFITH & THORNBURG, LLP**
**8 E. Figueroa Street, Suite 300, Santa Barbara, CA 93101**
**Tel: 805-965-5131 | Fax: 805-965-6751 | Email:** sholder@g-tlaw.com

Attorneys for Prospective Buyer, DEMETRIOS LOIZIDES

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re | Bankr. No. 9:17-bk-11154-DS |
| Burnett Family Farms, LLC, | Chapter 11 |
| Debtor in Possession | NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DEBTOR IN POSSESSION TO SELL SUBSTANTIALLY ALL OF THE PERSONAL PROPERTY OF THE ESTATE  FREE AND CLEAR OF LIENS, CLAIMSAND INTERESTS (INCLUDING SUCCESSOR LIABILITY CLAIMS), WITH LIENS TO ATTACH TO PROCEEDS; FOR A FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. §363(m); AND FOR A WAIVER OF BANKRUPTCY RULE 6004(h); OVERBID PROCEDURE; MOTION TO PAY ADMINISTRATIVE RENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS  JON TRAVIS BURNETT, GREG MORRIS AND DEMETRIOS LOIZIDES |
| | Date:   September 27, 2017 |
| | Time:  1:30 p.m. |
| | Place: 1415 State Street |
| |          Santa Barbara CA., |
| |          Courtroom 202 |

- 1 -

TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, PARTIES IN INTEREST AND COUNSEL OF RECORD:

NOTICE IS GIVEN that Debtor and Debtor in Possession Burnett Family Farms, LLC (the "Debtor") hereby moves this court for the following orders: (1) authorizing the Debtor to sell substantially all of the personal property of the estate (the "Property") free and clear of liens, claims, and interests (including successor liability claims)("Motion to Sell") to Maverick Saloon SY, LLC ("MSSY") for $75,000 cash on the terms and conditions set for in the asset purchase agreement ("APA"), a true and correct copy of which is attached and incorporated by reference as "Exhibit 1;" for a finding that MSSY is a good faith purchaser pursuant to 11 U.S.C. §363(m); for a waiver of Bankruptcy Rule 6004(h) ; and (2) authorizing the Debtor to pay administrative rent to 3687 Sagunto Street LLC ("Sagunto"), the owner of the Debtor's business premises, from the petition date to the time the Debtor relinquishes control over the Premises, with payment being made upon entry of an order of this court approving the administrative rent motion.

The relief requested in the motion is based upon this motion, the Memorandum of Points and Authorities, and the declarations of Jon Travis Burnett ("Burnett"), Greg Morris ("Morris"); Andrew Gombiner ("Gombiner"); and Demetrios Loizides, in support of the Motion to Sell, and is made pursuant to the provisions of 11 U.S.C. §§ 105(a), 363(b)(2), and 363(f) (3) and (4).

NOTICE IS FURTHER GIVEN that in accordance with the Local Rules of this Court, should any party wish to oppose this Motion to Sell, they must do so by written opposition filed and served upon counsel for Debtors not less than fourteen (14) days from the date of notice of this Motion and request that a hearing be set, the failure to do so timely being deemed a waiver of any opposition which may have been made, resulting in a declaration of nonopposition to be filed and entry of an order granting the within Motion to Sell.

WHEREFORE, the Debtor prays for an order of the Court as follows:

1.     Authorizing the Debtor to sell the Property to MSSY upon the terms and conditions set forth in Exhibit 1 to this motion unless higher and better bids are received and accepted by Trustee and approved by the Court at the time of the hearing on this motion.

2.     Ordering that the sale be free and clear of liens, claims and interests (including successor liability claims), with the liens of the EDD and IRS to attach to the proceeds of sale.

3.     For a finding that MSSY is a good faith purchaser entitled to all the protections and benefits of 11 U.S.C. § 363(m);

4.     Authorizing the Debtor to pay administrative rent to Sagunto at the rate of $318.00 per day from the petition date to the date Sagunto relinquishes possession of the Premises;

5.     For a waiver of the 10-day period provided for in Federal Rule of Bankruptcy Procedure 6004(h); and

6.     For such other and further relief as the court deems just and proper.


Dated: September 1, 2017                    LAW OFFICES OF LOUIS J. ESBIN


                                            LOUIS J. ESBIN ESQ,
                                            Attorneys for Debtor


Dated: September 1, 2017                    GRIFFITH & THORNBURGH, LLP


                                            JOSEPH M. SHOLDER
                                            Attorneys for Maverick Saloon Santa
                                            Ynez, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTS

#### A.    The Filing of This Bankruptcy Case

The Debtor filed a voluntary chapter 11 petition on June 26, 2017.

#### B.    The Debtor's Business Operations and its Business Premises

When it filed its bankruptcy case, the Debtor was operating a bar, restaurant and cabaret known as the Maverick Saloon.   The Debtor has continued to operate the Maverick Saloon during its bankruptcy case.

The Debtor operates the Maverick Saloon on real property owned by Sagunto at Unit "D" and "E" of 3687 Sagunto Street, Santa Ynez CA (the "Premises").   The rent that Debtor owes is set forth in the Stipulation for Judgment and Judgment per Stipulation entered March 17, 2017 in the Santa Barbara County Superior Court.  That amount is $318.00 per day.  The Debtor last paid rent through June 30, 2017.  So, the administrative rent is owed from July 1, 2017 to the present.

The Debtor does not have a liquor license to sell alcohol at the Maverick Saloon.  That license is owned by Burnett, the Debtor's managing member.

#### C.    Sagunto Gets Relief from Stay and Begins Eviction Proceedings

In an order entered on July 28, 2017, this court granted Sagunto relief from the automatic stay to enforce its remedies to obtain possession of the Premises, including lockout and eviction proceedings.  Sagunto has commenced those eviction proceedings and the Sheriff has posted an eviction notice on the Premises.

#### D.    The Sale Negotiations and the Proposed Sale

Post-petition, Morris was interested in acquiring the Property and Burnett's liquor license so Morris could operate the Maverick Saloon and on July 17, 2017, he entered into a letter of intent with the Debtor.  On August 1, 2017, Burnett entered into an agreement to sell his liquor license to Morris for $100,000.  This was part of an offer that Morris had made that included $25,000 for the Debtor's assets, a two-year consulting contract for Mr. Burnett at $50,000 per year, and $100,000 in lease

consideration for Sagunto.  Morris and Burnett also discussed the purchase by Morris of the Debtor's assets, and on August 9, 2017, Morris filed the trademark application known as Serial Number 87561345 for the word mark, "Maverick Saloon Santa Ynez California."

Morris also needed to reach an agreement with Sagunto for a new lease so that he could operate the Maverick Saloon at the Premises.   Obtaining a new lease for the Premises was essential because the Debtor has a cabaret license, which allows it to stay open and to play music to 2:00 a.m. on Thursday, Friday, Saturday and Sunday. That license was issued years ago when the Santa Ynez Valley was much less developed, and is not now obtainable for someone who plans to open a business like the Maverick Saloon at a different location.   Morris was not successful in his efforts to enter into a new lease with Sagunto.

During this time, MSSY was negotiating with the Debtor to purchase the Debtor's assets and with Burnett to purchase his liquor license.   The initial offer was $125,000 for the Debtor's assets, and $200,000 for Mr. Burnett's liquor license.  MSSY also made an offer of a ten percent interest ownership interest in MSSY to one of Sagunto's principals, Andrew Gombiner, who will, therefore, have an interest in the Maverick Saloon.  Later, in response to Mr. Burnett's request that MSSY reconfigure the $325,000 offer so that more money was allocated to the liquor license, the offer was modified so that $75,000 would be paid for the Debtor's assets and $250,000 would be paid for the liquor license.  Negotiations resulted in the purchase agreement attached hereto as Exhibit 1.  There are several contingencies to MSSY's offer, three of which are (1) this court approving the sale of the Property to MSSY on the terms set forth in Exhibit 1; (2) approval by the California Alcoholic Beverage Control of the transfer of the liquor license from Burnett to MSSY; and (3) MSSY entering into a lease of the Premises with Sagunto on terms satisfactory to MSSY.

A fourth contingency concerns the current agreement between Morris and Burnett for the sale of the liquor license and Morris' pending trademark application for

the name Maverick Saloon Santa Ynez California.  The agreement and application create potential clouds upon the liquor license and the Maverick Saloon business name.  To remove those clouds, MSSY has agreed to pay Morris $25,000, contingent upon Morris entering into rescission agreements, true and correct copies of which are attached and incorporated by reference as "<u>Exhibits 2 and 3</u>," respectively.

MSSY is in the process of negotiating a lease for the Premises with Sagunto.

MSSY is unrelated to the Debtor, any affiliate or insider of the Debtor including Burnett, the Debtor's counsel, or Morris.  MSSY is a good faith purchaser because it negotiated this purchase with the Debtor at arms-length.

### E.    Liens on the Property

The Debtor's originally filed Schedule D lists no secured creditors; however, a UCC search revealed two tax liens: one in favor of the Employment Development Department, which was recorded first and is the senior lien, and one in favor of the Internal Revenue Service.  A true and correct copy of the UCC Search is attached and incorporated by reference as "<u>Exhibit 4</u>."  The State Board of Equalization was levying the Debtor's bank accounts pre-petition, but according to the UCC search it does not have a lien on any of the Debtor's other assets.  The Debtor's originally filed Schedule E/F is attached and incorporated by reference as Exhibit 5, and as set forth on the UCC search does not show that the California Franchise Tax Board ("FTB") filed a lien on the Debtor's assets.

According to the Debtor's Schedule E/F, the Debtor owes the EDD $23,459.15. The IRS filed Claim No. 1, as amended, seeking $24,469.09 in secured taxes and $128,813.87 in unsecured priority taxes.  The California Department of Tax and Fee Administrative (fka, the "SBOE"), filed Claim No. 2, seeking payment of $597,760.06 in unsecured priority taxes.

### F.    Proposed Payment of the EDD and IRS Liens

The $75,000 purchase price will pay the $23,459.15 senior EDD lien and the junior IRS $24,469.09 lien in full

### G.    Proposed Overbid Procedures

The proposed sale of the Property is subject to higher and better offers being received and accepted by the Debtor prior to the scheduled hearing on this motion. Any party wishing to overbid shall deposit a cashier's check for $75,000 made payable to "Burnett Family Farms, LLC, Debtor and Debtor in Possession" with the Debtor's counsel at the address listed on the first page of this motion, no later than 5:00 p.m. PST on the day prior to the hearing.  Moreover, any party wishing to overbid also shall provide the Debtor with sufficient evidence to establish that it will be able to close if it is the successful bidder and its bid is approved by the Court.  The initial minimum overbid will be $25,000 (i.e., to be a qualified overbid, the initial overbid must be at least $100,000).   Subsequent overbids will be in minimum increments of $5,000. All other terms of the sale shall be upon the same terms and conditions as the proposed sale to MSSY described in Exhibit 1.

If one or more qualified overbids are received by 5:00 p.m. PST on the date immediately prior to the scheduled hearing, an auction of the Property shall be held in Courtroom 202 of the United States Courthouse, 1415 State Street, Santa Barbara, California at 1:30 p.m. PST on the date that is scheduled for the hearing on approval of this motion.  At the conclusion of the auction, the Debtor will ask the court to confirm the results of the auction and to approve the sale of the Property to the highest bidder.

The successful bidder at the auction shall open escrow within three business days following the hearing on this motion and the approval of this motion by the court. The cashier's check referenced above shall be forfeited by the successful bidder if escrow has not opened as set forth above or the sale does not close within fifteen days of the entry of an order by the court approving this sale through no fault of the Debtor.  Moreover, in the event of forfeiture or an inability to close by the successful bidder, the Debtor shall be entitled to sell the Property to the next highest bidder at the auction, without further notice or order of the Court, provided such sale (other than the

purchase price) is upon the same terms and conditions as the proposed sale to MSSY as set forth in Exhibit 1 to this motion.

**H.    Agreement with Sagunto**

Sagunto has the right to lockout and evict the Debtor.  Sagunto is willing to postpone its exercise of that right upon the following conditions to allow the sale of the Property to close:  (1) the payment of administrative rent in the amount of $318.00 per day from July 1, 2017 to the date that the Debtor relinquishes possession of the Premises; (2) the administrative rent owed from July 1, 2017 to the date this court enters its order approving the payment of administrative rent shall be paid within two calendar days of the entry of the administrative rent order; (3) administrative rent that accrues after the entry of the administrative rent order shall be paid on the first day of the month and if not paid by the fifth day of the month then the Debtor will be in default and Sagunto may exercise all of its rights under its judgment for unlawful detainer, relief from stay order, and writ of possession; (4) by accepting the payment of administrative rent, Sagunto shall not waive any of its rights under the its judgment for unlawful detainer; relief from stay order and writ of possession.

**II.    ARGUMENT**

**A.    The Court Should Approve the Sale Because It Is In The Best Interests Of The Bankruptcy Estate**

11 U.S.C. §363(b)(1) authorizes a debtor-in-possession to sell property when such sale is in the best interest of the estate.  A sale under section 363(b)(1) should be approved if the debtor-in-possession has established a sound business purpose for the transaction.  See, *In re Walter*, 83 B.R. 14, 16 (9th Cir. BAP 1988);  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991).

The proposed sale of the Property is in the estate's best interest.  This estate is receiving $75,000 from MSSY, a price that was reached after arms-length negotiations with MSSY and after Morris, the other potential buyer, was unable to negotiate a lease with Sagunto and decided not to continue to pursue a purchase of the Property.  The

Debtor also has a sound business reason for the proposed sale:  Sagunto is in the

process of evicting the Debtor from the Premises and if the Debtor can't close a sale

for the Property before the eviction happens, the Property will be worth much less (if it

can even be sold).

**B.    The Property Can Be Sold Free and Clear of Liens, Claims and Interests (Including Successor Liability Claims).**

There are several statutory grounds authorizing this court to approve the sale of

the Property to MSSY free and clear of the EDD and IRS liens.   Since $75,000

purchase price is greater than the $23,459.15 senior EDD lien and the junior IRS

$24,469.09 lien , the sale free of those  liens is authorized by 11 U.S.C. § 363(f)(3)

because the sales price is greater than the EDD's lien and the lien of the IRS.  See *In*

*re PW, LLC*, 391 B.R. 25, 39-40 (9th Cir. BAP. 2008).

There is no evidence that the SBOE or the FTB or anyone else has filed a lien

against the Property.  In fact, the SBOE Claim No. 2, is an admission that they hold

only an unsecured priority claim against the estate, but not a secured claim against

property of the estate. So, if one were asserted it would be subject to a bona fide

dispute pursuant to 11 U.S.C. § 363(f)(4).

Section 363(f) also permits this court to authorize the sale of property free and

clear of an "interest."  Although the term "interest" isn't defined in the Bankruptcy

Code, and while there is a minority view, most courts have held that an "interest" not

only includes an *in rem* interest, but also other obligations that might flow from the

ownership of a debtor's former property, like successor liability claims.  See *Indiana*

*State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC*), 576 F.3d 108, 126

(2d Cir.), cert. granted and judgment vacated on other grounds, 558 U.S. 1087

(2009)(section 363(f) authorized sale of assets free and clear of products liability

claims);  *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir.1996) (holding

that debtor coal mine operators could sell their assets under § 363(f) free and clear of

successor liability that otherwise would have arisen under federal statute);  *In re R Star*

*Restaurants, Inc.*, 2010 WL 3329814, at *4  *In re PBBPC, Inc.*, 484 B.R. 860, 867 (1st Cir. BAP 2013)(citing cases).

      **C.     MSSY is a Good Faith Purchaser per 11 U.S.C. § 363(m).**

       "Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.'" *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (citing, *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986). Lack of good faith may be shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); see also *In re R Star Restaurants, Inc.*, 2010 WL 3329814, at *2 (finding good faith where " (i) Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (ii) all payments to be made by Purchaser in connection with the sale have been disclosed; (iii) Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction, and its affiliation with insiders of the Debtor and related agreements with such insiders have been disclosed; and (iv) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was without collusion, at arm's-length, and in good faith."); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction").

      In this case, the proposed sale is not predicated on fraud or collusion, and the sale is not to an insider, nor have any insiders received any special treatment or consideration. Furthermore, the Debtor has submitted testimony from of the MSSY demonstrating that the proposed sale has been entered into on an arms-length basis after vigorous negotiations and establishing there is no connection or relation between MSSY and the Debtor.   This satisfies section 363(m).

**D.      There is Good Cause for the Debtor Paying Administrative Rent.**

The Debtor has occupied and conducted its business on the Premises since the petition date.  Also, by continuing to operate on the Premises, the Debtor has been able to preserve the value of its trade name and cabaret license, without which the Debtor's assets would either be worth much less than $75,000 or unsaleable.   As such, Sagunto has conferred a benefit on the Debtor's estate and is entitled to an administrative rent claim per 11 U.S.C. § 503(a)(1)(A).    Also, if administrative rent isn't paid and Sagunto retakes possession of the premises, the purchase transaction cannot be consummated.

**WHEREFORE**, the Debtor prays for an order of the Court as follows:

1.      Authorizing the Debtor to sell the Property to MSSY upon the terms and conditions set forth in Exhibit 1 to this motion unless higher and better bids are received and accepted by Trustee and approved by the Court at the time of the hearing on this motion.

2.      Ordering that the sale be free and clear of liens, claims and interests (including successor liability claims), with the liens of the EDD and IRS to attach to the proceeds of sale.

3.      For a finding that MSSY is a good faith purchaser entitled to all the protections and benefits of 11 U.S.C. § 363(m);

4.      Authorizing the Debtor to pay administrative rent to Sagunto at the rate of $318.00 per day from the petition date to the date Sagunto relinquishes possession of the Premises;

5.      For a waiver of the 10-day period provided for in Federal Rule of Bankruptcy Procedure 6004(h); and

///

1          6.      For such other and further relief as the court deems just and proper.

2

3    Dated: September 1, 2017                 LAW OFFICES OF LOUIS J. ESBIN

4                                              /s/ Louis J. Esbin

5                                              LOUIS J. ESBIN ESQ,
6                                              Attorneys for Debtor

7    Dated: September 1, 2017                 GRIFFITH & THORNBURGH, LLP

8                                              /s/ Joseph M. Sholder

9                                              JOSEPH M. SHOLDER
10                                             Attorneys for Maverick Saloon Santa
11                                             Ynez, LLC

# DECLARATION OF JON TRAVIS BURNETT

Jon Travis Burnett declares:

1.      I am the managing member of Debtor and Debtor in Possession Burnett Family Farms, LLC (the "Debtor").

2.      I participated in the events described in this declaration.  For that reason, I have person knowledge of the fact stated in this declaration, and could and would competently testify thereto if called upon to do so.

3.      The Debtor filed a voluntary chapter 11 petition on June 26, 2017.

4.      When it filed its bankruptcy case, the Debtor was operating a bar, restaurant and cabaret known as the Maverick Saloon.   The Debtor has continued to operate the Maverick Saloon during its bankruptcy case.

5.      The Debtor operates the Maverick Saloon on real property owned by 3687 Sagunto Street LLC ("Sagunto") at Unit "D" and "E" of 3687 Sagunto Street, Santa Ynez CA (the "Premises").   The rent that the Debtor owes is set forth in the Stipulation for Judgment and Judgment per Stipulation entered March 17, 2017 in the Santa Barbara County Superior Court.  That amount is $318.00 per day.  The Debtor last paid rent through June 30, 2017.

6.      The Debtor does not have a liquor license to sell alcohol at the Maverick Saloon.  I own that license.

7.      In an order entered on July 28, 2017, this court granted Sagunto relief from the automatic stay to enforce its remedies to obtain possession of the Premises, including lockout and eviction proceedings.  Sagunto has commenced those eviction proceedings and the Sheriff has posted an eviction notice on the Premises.

8.      After the Debtor filed its bankruptcy case, I had conversations with Greg Morris ("Morris") about acquiring the Debtor's assets and my liquor license so Morris could operate the Maverick Saloon. On August 1, 2017, I entered into an agreement to sell my liquor license to Morris for $100,000.  Morris and I also discussed the purchase by Morris of the Debtor's assets, and on August 9, 2017, Morris filed the trademark

application known as Serial Number 87561345 for the word mark, "Maverick Saloon Santa Ynez California."

9.     To be able to operate the Maverick Saloon on the Premises, Morris also needed to reach an agreement with Sagunto for a new lease.   Obtaining a new lease for the Premises was essential because the Debtor has a cabaret license, which allows it to stay open and to play music to 2:00 a.m. on Thursday, Friday, Saturday and Sunday.  That license was issued years ago when the Santa Ynez Valley was much less developed, and is not now obtainable for someone who plans to open a business like the Maverick Saloon at a different location.

10.     Morris was not successful in his efforts to enter into a new lease with Sagunto and, as a result, lost his interest in acquiring the Debtor's assets.

11.     Thereafter, Maverick Saloon SY, LLC ("MSSY"), through its principal, Demetrios Loizides, began negotiations with the Debtor to purchase the Debtor's assets and negotiations with me to purchase my liquor license.  Those negotiations resulted in the purchase agreement to acquire substantially all of the Debtor's assets, a true and correct copy of which is attached and incorporated by reference as "Exhibit 1," and a separate agreement to purchase my liquor license.

12.     The Debtor's originally filed Schedule D lists no secured creditors; however, a UCC search revealed two tax liens: one in favor of the Employment Development Department, which was recorded first and is the senior lien, and one in favor of the Internal Revenue Service.  A true and correct copy of the UCC Search is attached and incorporated by reference as "Exhibit 4."

13.     The State Board of Equalization was levying the Debtor's bank accounts pre-petition, but according to the UCC search it does not have a lien on any of the Debtor's other assets.  The Debtor's originally filed Schedule E/F is attached and incorporated by reference as "Exhibit 5," and as set forth on the UCC search does not show that the California Franchise Tax Board ("FTB") filed a lien on the Debtor's assets.

14.     According to the Debtor's Schedule E/F, the Debtor owes the EDD $23,459.15. The IRS filed Claim No. 1, as amended, seeking $24,469.09 in secured taxes and $128,813.87 in unsecured priority taxes. The California Department of Tax and Fee Administrative (fka, the "SBOE"), filed Claim No. 2, seeking payment of $597,760.06 in unsecured priority taxes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of September at Santa Ynez, California.

Jon Travis Burnett

# DECLARATION OF GREG MORRIS

Greg Morris declares:

1.     I participated in the events described in this declaration. For that reason, I have person knowledge of the fact stated in this declaration, and could and would competently testify thereto if called upon to do so.

2.     After Burnett Family Farms, LLC (the "Debtor") filed its bankruptcy case, I became aware of and interested in purchasing the Maverick Saloon located at 3687 Sagunto Street in Santa Ynez, California (the "Premises").

3.     I negotiated and entered into a letter of intent with the Debtor to acquire the assets comprising the Maverick Saloon (the "Maverick Saloon Assets") on or about July 17, 2017.

4.     During my negotiations, I learned that Jon Travis Burnett owned ABC License No. 469062 (the "ABC License") used by the Debtor at the Maverick Saloon.

5.     I then negotiated and entered into an agreement with Mr. Burnet to purchase the ABC License on or about August 1, 2017 for $100,000.

6.     In furtherance of my intended acquisition of the Maverick Saloon, on or about August 9, 2017, I filed the trademark application known as Serial Number 87561345 for the word mark, "Maverick Saloon Santa Ynez California."

7.     Also in furtherance of my intended acquisition of the Maverick Saloon, I started negotiations with Andy Gombiner, the property manager for the owner of the Premises, to seek a new lease or the assignment of the existing lease for the Premises.

8.     It was essential that I be able to operate the Maverick Saloon at the Premises using the ABC License and Debtor's cabaret license.

9.     I was unsuccessful in reaching a reasonably acceptable agreement with Mr. Gombiner on the lease assignment: He required a personal ownership interest in the Maverick Saloon in order to approve of the lease assignment on

- 14 -

behalf of the landlord, and I was unwilling to give him such an ownership interest.

10. Without obtaining a reasonably acceptable lease assignment, I was no longer interested in purchasing either the Maverick Saloon Assets or the ABC License or obtaining the trademark.

I declare under penalty of perjury that the foregoing is true and correct. Dated this _30_ day of August, 2017 at _Los Angeles_ California.

_____
Greg Morris

## DECLARATION OF DEMETRIOS LOIZIDES

Demetrios Loizides declares:

1.      I am the managing member of Maverick Saloon SY, LLC ("MSSY").   I participated in the events described in this declaration.  For that reason, I have person knowledge of the fact stated in this declaration, and could and would competently testify thereto if called upon to do so.

2.      On or about June of 2017, I became interested in acquiring substantially all of the assets of Debtor and Debtor in Possession Burnett Family Farms, LLC (the "Debtor"), and the liquor license owned by Jon Travis Burnett.

3.      On or about August 1, 2017, I made an initial offer to purchase the Debtor's assets for $125,000, and Mr. Burnett's liquor license for $200,000.  At that time, I also began the process to negotiate a lease for the Premises.  I discussed the concept of paying $80,000 to the lessor, 3687 Sagunto Street LLC ("Sagunto") , to acquire a new lease of the Debtor's business premises located at Unit "D" and "E" of 3687 Sagunto Street, Santa Ynez CA (the "Premises"), but ultimately came to an agreement with Andrew Gombiner,  one of the Sagunto's principals,  that he would have a ten percent (10%)  interest in MSSY and will, therefore, have an interest in the Maverick Saloon.   This offer is consistent with my prior business practices with lessors of other business that I own.  I have adopted this practice because I find that it benefits my businesses if the lessor has a stake the success of the business.

4.      During my negotiations with Mr. Burnett, I learned that he had previously entered into an agreement to sell his liquor license to Greg Morris and that Mr. Morris had filed a trademark application for the name Maverick Saloon Santa Ynez California.  I also learned that Mr. Morris had tried but failed to negotiate a new lease of the Premises with Sagunto and, as a result, Mr. Morris was no longer interested in acquiring the Debtor's assets or Mr. Burnett's liquor license.

5.  Without the liquor license, use of the Maverick Saloon name, and a new lease for the Premises, MSSY could not operate the Maverick Saloon. So I negotiated with Mr. Morris to obtain a rescission of the liquor license agreement he had with Mr. Burnett and for Mr. Morris to withdraw his trademark application. This also removed clouds on the liquor license and the name. We reached agreements on those points, true and correct copies of which are attached hereto as Exhibits 2 and 3.

6.  In my subsequent negotiations with Mr. Burnett, he requested that I reconfigure my $325,000 offer so that more money was allocated to the liquor license. I agreed. The current offer, which is set forth in the purchase agreement attached as Exhibit 1, is $75,000 for substantially all of the Debtor's assets for $250,000 for Mr. Burnett's liquor license.    .

7.  MSSY and I are unrelated to the Debtor, any affiliate or insider of the Debtor including Burnett, the Debtor's counsel, or Morris. MSSY negotiated this purchase with the Debtor at arms-length.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 30TH day of August, 2017 at _LONG BEACH_ California.

_Demetrios Loizides_

- 17 -

## DECLARATION OF ANDREW GOMBINER

1.    I am a member of 3687 Sagunto Street LLC ("Sagunto") and the property manager of the premises located at Unit "D" and "E' of 3687 Sagunto Street, Santa Ynez CA (the "Premises") upon which Debtor and Debtor in Possession Burnett Family Farms, LLC (the "Debtor") operates its business known as the Maverick Saloon. I participated in the events described in this declaration. For that reason, I have personal knowledge of the facts stated in this declaration, and could and would competently testify thereto if called upon to do so.

2.    In or about the end of July and continuing through August 2017, I was approached by two potential purchasers of the Debtor's assets who also wanted to enter into a new lease with Sagunto for the Premises. Those purchasers were Greg Morris and Demetrios Loizides.

3.    During my negotiations with Mr. Morris, he sent me an email dated August 3, 2017, which described the offer he had made for the Debtor's assets, for the liquor license of Jon Travis Burnett, lease consideration offered to Sagunto and a consulting agreement for Mr. Burnett. A true and correct copy of that email is attached hereto as Exhibit 7. As set forth in Exhibit 7, that offer was $100,000 for the liquor license, $25,000 for the Debtor's assets, $100,000 to Sagunto for lease consideration, and $50,000 per year for two years for a consulting contract with Mr. Burnett.

4.    I determined that it was in Sagunto's best interest to pursue a new lease with Mr. Loizides for three reasons: (1) Mr. Loizides' offer for Jon Travis Burnett's liquor license was $100,000 higher than Mr. Morris' offer and I thought there was a better chance the liquor license would stay with the saloon, (2) Mr. Loizides offered to pay Sagunto 14 cents more per square foot as rent, and (3) I became uncomfortable when Mr. Morris initially denied having a separate

undisclosed agreement with Mr. Burnett. Days later, Mr. Morris shared with me that he would be paying Mr. Burnett $100,000 for consulting.

5.    In connection with my negotiations with Mr. Loizides, he offered me a ten percent interest in Maverick Saloon SY, LLC, the entity he formed to purchase the Debtor's assets, and I accepted that offer after disclosing it to the other members of Sagunto and with their approval. Mr. Morris' offer was not rejected for the reason stated in his declaration.

I declare under penalty of perjury that the foregoing is true and correct. Dated this 31st day of August, 2017 at Los Angeles, California.

_____

Andrew Gombiner

EXHIBIT "1"

**<u>ASSET PURCHASE AGREEMENT</u>**

THIS ASSET PURCHASE AGREEMENT (this "<u>Agreement</u>") is made and dated this _____ day of _____, 2017, by and between BURNETT FAMILY FARMS, LLC, a California limited liability company ("<u>Seller</u>" or "<u>Debtor</u>") and MAVERICK SALOON SY, LLC, a California limited liability company ("<u>Buyer</u>"), each of which may be referred to as a "Party," or together, the "Parties."

RECITALS

WHEREAS, on June 26, 2017 (the "<u>Petition Date</u>"), BURNETT FAMILY FARMS, LLC, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>"), Case No. 9:17-bk-11154-DS (the "<u>Case</u>"), in which Case, Seller is operating as a debtor and debtor in possession.

WHEREAS, Debtor is engaged in the business of owning and operating a restaurant and bar, with live entertainment and a dance hall, located at Unit "D" and Unit "E" of 3687 Sagunto Street, Santa Ynez, California 93460 (collectively, the "<u>Business</u>").

WHEREAS, subject to the Bankruptcy Court's approval and the terms and conditions contained in this Agreement, Seller desires to sell to Buyer, and Buyer agrees to purchase from Seller, substantially all the assets of Seller related to the Business (the "<u>Transaction</u>").

NOW, THEREFORE, in consideration of the mutual covenants, representations and warranties set forth in this Agreement, the parties agree as follows:

AGREEMENT

ARTICLE 1. ASSET DESCRIPTION

1.1.    <u>Assets</u>. Seller agrees that at the Closing, as defined in Section 5.1, it shall sell, assign, transfer and convey to Buyer free and clear of all other liens, claims, encumbrances and interests, and Buyer agrees that it shall purchase and acquire from Seller, all of Seller's right, title, and interest in all of the assets used by Seller in connection with the operation of the Business (the "<u>Assets</u>"), including, without limitation, the following:

1.1.1.    all tangible personal property, furnishings, fixtures, equipment, machinery, parts, accessories, inventory, and any other property listed on *<u>Schedule 1.1.1</u>*, which is attached and incorporated by reference (the "<u>Personal Property</u>");

1.1.2.    all computer hardware;

1.1.3.    all trademarks applications, trademark registrations, trade names, brand names, and rights to the names "Maverick Saloon";

1.1.4.    all licenses, URL's, domain names, websites and web addresses;

1.1.5.    all books, records, logs, papers, files, location files, correspondence, reports, account information, records and other business files and records, except for Seller's limited liability company files and records; and

1.1.6. such other assets, properties, interests, and rights owned by Seller that are used or useful in connection with the operation of the Business, as a going concern, and all associated goodwill, if any (the "Goodwill").

1.2. Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the Assets shall not include Seller's (i) cash and cash equivalents, (ii) deposits, prepaid amounts, and accounts receivable; (iii) rights to the accounting software licensed to Seller, including the computer used to run such software and all accounting information and data; (iv) any assets listed in Schedule 1. 2, and (v) all causes of action, liens, debts, and lawsuits of Seller, including, without limitation, those arising under chapter 5 of the Bankruptcy Code against persons other than the parties to this Agreement.

## ARTICLE 2. PURCHASE PRICE

2.1. Amount of Purchase Price. In consideration for the transfer of the Assets, Buyer hereby agrees to pay to Seller Seventy-Five Thousand Dollars ($75,000.00) (the "Purchase Price") in cash at the Closing.

2.2. Allocation of Purchase Price. The Purchase Price shall be allocated among the Assets as follows: (i) Fifty Thousand Dollars ($50,000.00) to furniture, fixtures, and equipment; and (ii) Twenty-Five Thousand Dollars ($25,000.00) to Goodwill. Seller and Buyer agree to use the allocations so determined for all tax purposes, including without limitation, those matters subject to Section 1060 of the Internal Revenue Code of 1986, as amended.

2.3. Sale Deposit. Concurrent with the full execution and delivery of this Agreement, Buyer is delivering make a deposit (the "Sale Deposit") in the amount of Twenty Thousand Dollars ($20,000) by delivering a certified check payable to the order of the "Bankruptcy Estate of Burnett Family Farms, LLC" to Debtor's attorney, which deposit shall be held by a disinterested third escrow company, responsible for disbursing funds from the Purchase Price as further ordered by the Bankruptcy Court.

2.4. Bankruptcy Court Approval. The Transaction is expressly subject to Bankruptcy Court approval in the Case. Within three (3) business days of Seller's receipt of Buyer's executed Agreement and the Sale Deposit, Seller shall file a motion to approve the Transaction with the Bankruptcy Court pursuant to section 363 of the United States Bankruptcy Code (11 U.S.C. § 363) (the "Approval Motion"). As part of such motion, Seller shall seek an order pursuant to section 363(f) of the Bankruptcy Code that the Assets will be sold to Buyer free and clear of any liens, claims, and interests, and shall also request a finding of Buyer's "good faith" in accordance with section 363(m) of the Bankruptcy Code. Seller shall seek to have the Approval Motion heard on shortened notice, but this Agreement is not contingent upon the Bankruptcy Court hearing the Approval Motion on shortened notice.

2.4.1. In the event the Approval Motion is denied, is granted on terms that modify the provisions of this Agreement in a way that is unsatisfactory to Buyer in its sole discretion, or the Closing does not otherwise occur due to a valid termination of this Agreement by Buyer under Section 10.2 or ARTICLE 8, then the Sale Deposit shall be returned to Buyer within three (3) business days. In addition to Seller's obligation to return the Sale Deposit, if the Approval Motion is denied as to the Buyer and, alternatively, a sale of the Assets by Bankruptcy Court order is authorized to a party unaffiliated with Buyer, Seller shall pay Buyer a breakup fee of $5,000 (the "Breakup Fee"), representing the reimbursement to Buyer of its attorney's fees and due diligence costs expended in connection with this transaction. In the event that the Closing does not occur due to a default by Buyer of this Agreement, Buyer shall forfeit all rights to the Sale Deposit and

the Breakup Fee, and the Sale Deposit proceeds shall be retained by the Seller for the benefit of the Debtor.

2.5. <u>Liens, Claims, Encumbrances and Interests.</u> The Sale shall be free and clear of all liens, claims, encumbrances, or other interests to the fullest extent provided by 11 U.S.C. § 363, with such liens to attach to the net proceeds of the Sale in the same extent, validity, and priority which they had prior to the filing of the Bankruptcy Case.

2.6. <u>Taxes.</u> Buyer shall pay all sales and use taxes, if any, that arise from the Transaction.

## ARTICLE 3. REPRESENTATIONS AND WARRANTIES

3.1. <u>Seller's Representations and Warranties.</u> Aside from the representations and warranties set forth below, the Assets are sold on an "AS IS, WHERE IS" basis, without representation and warranties with respect thereto. Seller represents, warrants, and covenants to Buyer:

3.1.1. <u>Power and Authority.</u> Seller has the full power and authority to execute, deliver, and perform its obligations under this Agreement, subject to the approval of the Bankruptcy Court, as described herein. Upon entry by the Bankruptcy Court of an order authorizing and approving this Agreement and the Transaction, this Agreement and all agreements, instruments, and documents herein provided to be executed by Seller are and as of the Closing will be duly authorized, executed, and delivered by, and are and will be binding upon Seller.

3.1.2. <u>No Transfer of Assets.</u> Seller has not disposed of or transferred any of the Assets since the Petition Date, other than pursuant to orders entered by the Bankruptcy Court. Seller has disclosed an agreement by Jon Travis Burnett to sell his liquor license to Greg Morris, which agreement has, or shall be, rescinded prior to the Closing.

3.1.3. <u>No Litigation.</u> To the best of Seller's knowledge, there are no actions, suits or proceedings pending or threatened in any court or before any administrative agency which would prevent Seller from completing the Transaction.

3.1.4. <u>Correctness of Representations.</u> No representation or warranty of Seller in this Agreement or any other information furnished by Seller pursuant to this Agreement contains any untrue statement of material fact or fails to state any fact necessary in order to make the statements not misleading in any material respect. All statements, representations and other information provided by Seller to Buyer shall be true and correct on and as of the Closing as though made on that date.

3.2. <u>Buyer's Representations and Warranties.</u> Buyer represents, warrants, and covenants to Seller that:

3.2.1. <u>Corporate Organization.</u> Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of California.

3.2.2. <u>Power and Authority.</u> Buyer has all requisite power and authority to enter into this Agreement and carry out all of its obligations under this Agreement. The manager or managers of Buyer who shall execute and deliver this Agreement have been duly authorized to do so by all requisite action on the part of Buyer.

3.2.3. <u>No Litigation.</u> To the best of Buyer's knowledge, there are no actions, suits, or proceedings pending or threatened in any court or before any administrative agency which would prevent Buyer from completing the Transaction.

3.2.4. <u>Capability</u>. Buyer is willing, authorized, capable, and qualified financially, legally and otherwise, to unconditionally perform all obligations under this Agreement in the event that this Agreement is approved by the Bankruptcy Court.

## ARTICLE 4. CONDITIONS PRECEDENT TO CLOSING

4.1. <u>Buyer's Conditions</u>. Buyer's obligation to complete the Transaction is subject to the satisfaction at or prior to the Closing of each of the following conditions (any of which contained in subsections 4.1.2, 4.1.3, 4.1.5, 4.1.5 and 4.1.6, and Seller's Covenants in Article 6may be waived in writing by Buyer):

4.1.1. <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered a final, non-appealable order (which has not been appealed or stayed on appeal) (the "<u>Sale Approval Order</u>") approving Seller's motion for approval of the Transaction and this Agreement, and (i) approving this Agreement without modifications unsatisfactory to Buyer in its sole discretion and authorizing Seller to transfer the Assets to Buyer free and clear of all liens, claims (specifically including, but not limited to, all claims for successor liability against Buyer), encumbrances, and other interests except as otherwise provided herein, (ii) determining that Buyer is a good-faith purchaser. Seller's notice of the motion shall include a specific statement that the sale is free and clear of all claims for successor liability against Buyer and an accurate recital of the material facts preceding the motion.

4.1.2. <u>Transfer of Licenses to Buyer</u>. Seller shall have caused the Department of Alcoholic Beverage Control to transfer, or otherwise approve of the transfer of, all Seller's licenses, including the Type 48 Liquor License used by Seller, but owned by Seller's managing member, Jon Travis Burnett, to Buyer, without imposing any additional conditions on said licenses. Seller shall have caused all other licenses, if any, used in the operation of the Business to be transferred to Buyer.

4.1.3. <u>Transfer or Grant of Land Use Entertainment License.</u> The County of Santa Barbara shall approve the transfer of the existing land use entertainment (or Cabaret) license or permit, or shall grant a new license or permit conferring substantially similar rights including, the right to conduct live entertainment Thursday through Sunday until 2 a.m. and to serve alcoholic beverages until 2 a.m.

4.1.4. <u>Lease Approved by Landlord</u>. Buyer shall enter into a lease with the landlord of the entire premises where the Business is operated conditioned upon the Closing hereunder and otherwise satisfactory to Buyer in Buyer's sole discretion (the "<u>Lease</u>"), which Lease shall be effective and Landlord shall assume all duties, obligations and liabilities thereunder as of the Closing.

4.1.5. <u>Performance of Obligations</u>. All terms, covenants, agreements, and conditions set forth in this Agreement to be complied with and performed by Seller on or prior to the Closing shall have been fully complied with and performed in all material respects, and all representations and warranties of Seller shall be true on the Closing in all material respects as if made on and as of such date.

4.1.6. <u>Delivery of Documents</u>. Seller's transfer and sale of Assets hereunder shall be effected by the delivery by Seller to Buyer at the Closing of a bill of sale for all items of personal property and other good and sufficient instruments of sale, transfer, assignment and conveyance and all consents of third parties necessary thereto as shall be required, or as may be reasonably

necessary in order to effectively vest in Buyer good and marketable title to the Assets and effectuate the Transaction.

4.2. <u>Seller's Conditions</u>. Seller's obligation to complete the Transaction is subject to the satisfaction at or prior to the Closing of each of the following conditions (any which contained in subsections 4.2.2 and 4.2.3 may be waived in writing by Seller):

4.2.1. <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered the Sale Approval Order in a form satisfactory to Buyer, in Buyer's sole discretion.

4.2.2. <u>Performance of Obligations</u>. All terms, covenants, agreements, and conditions set forth in this Agreement to be complied with and performed by Buyer on or prior to the Closing shall have been fully complied with and performed in all material respects, and all representations and warranties of Buyer shall be true on the Closing in all material respects as if made on and as of such date.

4.2.3. <u>Delivery of Documents</u>. Buyer and shall have executed and delivered to Seller all documents and evidence requested by Seller in its reasonable discretion to determine whether Buyer is willing, authorized, capable and qualified financially, legally and otherwise, to unconditionally perform all obligations under this Agreement in the event that this Agreement is approved by the Bankruptcy Court.

## ARTICLE 5. CLOSING

5.1. <u>Closing</u>. The closing of the Transaction (the "<u>Closing</u>" or the "<u>Closing Date</u>") shall occur at the offices of the Seller's attorney or as otherwise mutually agreed, after all conditions to Closing shall be satisfied or waived in writing, but in any event, no later than thirty (30) days following the satisfaction or waiver of the conditions precedent to Closing. At or before the Closing, (i) Buyer shall pay the remainder of the Purchase Price by delivering a certified check payable to the order of the "Bankruptcy Estate of Burnett Family Farms, LLC" to escrow and shall deliver all other documents reasonably requested by Seller, and (ii) Seller shall deliver to Buyer possession of the Assets and all documents required by Article 4.1.6 and all other documents reasonably requested by Buyer.

## ARTICLE 6. COVENANTS AND ACKNOWLEDGEMENTS PENDING CLOSING

6.1. <u>Conduct of Business</u>. Seller covenants that, pending the Closing, without Buyer's prior written consent:

6.1.1. <u>Contracts</u>. Seller shall not enter into any contract relating to the Assets;

6.1.2. <u>Preserving Assets</u>. Seller shall use reasonable best efforts to preserve the Assets and maintain them in the same condition as of the date of this Agreement, reasonable wear and tear excepted, including not removing the dollar bills pinned to the bar/ceiling, photos, and other nostalgia comprising the interior of the Business's premises;

6.1.3. <u>Sale of Assets</u>. Seller shall not sell or otherwise dispose of any material asset which constitutes a portion of the Assets; and

6.1.4. <u>Insurance</u>. Seller shall continue to carry the existing insurance of the Assets.

6.2. <u>Representations True</u>. The representations and warranties contained herein shall continue to be true and correct on and as of the Closing as if made on and as of the Closing; and Seller shall advise Buyer promptly in writing of any condition or circumstance occurring from the

date hereof up to and including the Closing which would cause the representations and warranties of Seller to become untrue in any material respect.

      6.3.    <u>Buyer's Acknowledgements</u>.  Buyer acknowledges that its obligations under this Agreement, including with respect to payment of the Purchase Price and Closing under Section 5.1, shall not be contingent on any condition other than as set forth in Section 4.1. Without limiting the foregoing, Buyer's obligations shall not be contingent on any (i) financing contingency, (ii) contingency relating to the completion of due diligence (other than items in Section 4.1), (iii) contingency relating to the approval of the Transaction by Buyer's members or managers or other internal approvals or consents, or (iv) contingency relating to consideration granted to the landlord or its agent, including without limitation, any interest in Buyer or payment of any amount, other than a payment under the Lease. Buyer further acknowledges that the Bankruptcy Court has the discretion to approve this Agreement and that in the event that the Closing does not occur for any reason, Buyer shall not be entitled to any breakup fee, topping fee, expense reimbursement, or other similar arrangement.

## ARTICLE 7. COVENANTS OF ACCESS AND COOPERATION

      7.1.    <u>Access</u>.  Seller shall give Buyer access during normal business hours throughout the period prior to the Closing to the Assets and to Seller's books, contracts, commitments, and other records with respect thereto, and shall furnish Buyer during such period with such information in Seller' possession concerning the Assets as Buyer may reasonably request.

      7.2.    <u>Permits and Approvals</u>.  Each party covenants and agrees to promptly furnish the other with all information and data in the furnishing party's possession requested in writing by the requesting party which is reasonable and necessary in order to assist the requesting party to secure the permits, licenses, approvals, financing, and/or consents required to complete the Transaction, if any.

      7.3.    <u>Litigation; Claims</u>.  Each party covenants and agrees to promptly notify the other of any claim, action, suit, proceeding or investigation which is commenced or threatened and becomes known to any of them between the date of this Agreement and the Closing and relating to or affecting the Assets.

      7.4.    <u>Post-Closing Access</u>.  On the Closing Date, Seller shall irrevocably instruct all attorneys and servants and agents of Seller to provide to Buyer full access to all books, records, communications and information of Seller in the possession or control of attorneys and servants and agents of Seller, whether or not privileged, to the same extent as such access was available to Seller and its directors before the Closing to the extent the books, records, communications and information relate to the Assets. Such instructions shall be confirmed by Seller after completion if reasonably requested by Buyer.

## ARTICLE 8. RISK OF LOSS

      Risk of loss to the Assets shall not pass to Buyer until the Closing. In the event of the material destruction or damage of any material Assets prior to Closing, Seller shall promptly notify Buyer in writing. Buyer shall have ten (10) days from receipt of such notice to notify Seller of its election to terminate this Agreement. Upon Buyer providing such notice to Seller, this Agreement shall cease and terminate and be of no further force or effect, and neither party shall have any rights against the other by reason of this Agreement and/or such termination. In the alternative, Buyer may elect to accept insurance proceeds payable to Seller to cover the loss, may propose a reduction in the Purchase Price to reflect the loss or may propose other modified terms and, in

such event, Seller and Buyer shall negotiate in good faith to reach an agreement to a revised Transaction. Seller agrees to support a modification that has been bargained and agreed to in writing and signed on behalf of both Seller and Buyer and, as needed, to immediately seek Bankruptcy Court approval of the modifications on shortened notice, if so requested by Buyer.

## ARTICLE 9. NOTICES

9.1.    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of delivery, if delivered personally or by telecopy or similar transmittal (with receipt acknowledged), to the party to whom notice is to be given, or on the fifth business day after mailing if mailed by first class mail, registered or certified, postage prepaid and properly addressed as follows:

If to Seller:

J. Travis Burnett, Managing Member
BURNETT FAMILY FARMS, LLC
1559 Edison Street
Santa Ynez, CA 93460

With a copy to:

Louis Esbin, Esq.
Law Offices of Louis J. Esbin
25129 The Old Road, Suite 114
Stevenson Ranch, CA 91318

If to Buyer:

Demetrios Loizides, Managing Member
MAVERICK SALOON SY, LLC
100 W Broadway, Ste 1200
Long Beach, CA 90802

With a copy to:

Sandra K. McBeth, Esq.
2236 So. Broadway, Suite J
Santa Maria, CA 93454

Travis C. Logue, Esq.
Rogers, Sheffield & Campbell, LLP
427 East Carrillo Street
Santa Barbara, CA 93101

9.2.    Changes. Any Party hereto may change its address or fax number for the purpose of receiving notices or demands as herein provided by a written or faxed notice given in the manner provided above to the other parties hereto, which notice of change of address or fax number shall not become effective, however, until the actual receipt thereof by the other parties.

## ARTICLE 10. TERMINATION

10.1.    Termination in Absence of a Default. This Agreement may be terminated at any time prior to the hearing on the Approval Motion by the written agreement of Seller and Buyer. Buyer may terminate this Agreement by written notice upon the failure Seller to satisfy, as of the Closing Date, one or more of the conditions precedent set forth in ARTICLE 4 and ARTICLE 6 above. In the absence of any existing default by Buyer, Seller shall cause the Sale Deposit to be returned to Buyer within two (2) business days after this Agreement is terminated.

10.2.    Termination as a Result of a Default. If any Party materially breaches any covenant or representation or is otherwise in material default under the terms of this Agreement, the other party may terminate this Agreement, after having provided a reasonable notice to cure, by providing written notice to such defaulting party.

# ARTICLE 11. MISCELLANEOUS

11.1. <u>Further Assurances</u>. Each Party shall, at the request of the other, at any time and from time to time following the Closing hereunder, execute and deliver to the requesting Party all such further instruments as may be reasonably necessary or appropriate in order to more effectively assign, transfer and convey to Buyer the Assets, or to perfect or record Buyer's title to or interest in the Assets, or otherwise carry out the provisions of this Agreement.

11.2. <u>Access to Books and Records</u>. After the Closing, Seller shall have reasonable access to the books and records transferred to Buyer as part of the Assets for the purpose of administering and winding down the Debtor's Case. Upon receipt of reasonable prior notice, Buyer agrees to permit Seller and its attorneys or agents to inspect and copy books and records relating to the Assets in connection with the administration of the Debtor's Case.

11.3. <u>Confidentiality</u>. (Intentionally Omitted).

11.4. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without reference to conflict of law principles, and except as superseded by applicable federal laws.

11.5. <u>Bankruptcy Court Jurisdiction</u>. The resolution of all disputes between the parties herein concerning the Assets or this Agreement shall be subject to the exclusive jurisdiction of the United States Bankruptcy Court for the Central District of California.

11.6. <u>Binding Effect</u>. This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective heirs, successors, personal representatives, and permitted assigns.

11.7. <u>Arms-Length Transaction</u>. The Transaction, and the relationship between Seller and Buyer, and their respective agents, is wholly "arms-length."

11.8. <u>Time of Essence</u>. Time is of the essence of this Agreement and all of the terms, provisions, covenants, and conditions hereof.

11.9. <u>Captions</u>. The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference to this Agreement and in no way whatsoever define, limit or describe the scope or intent of this Agreement, nor in any way affect this Agreement.

11.10. <u>Fees and Expenses</u>. Except with respect to the breakup fees, if any, the Parties hereto shall each bear their own expenses, including but not limited to legal fees, incident to the negotiation and preparation of this Agreement and the consummation of the transactions contemplated hereby.

11.11. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter hereof and supersedes all prior agreements, representations, and understandings of the Parties. No additions to or modification of this Agreement shall be binding unless executed in writing by all the Parties. Except as may be otherwise provided in this Agreement, no waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver, and no waiver shall be binding unless evidenced by an instrument in writing executed by the party making the waiver.

11.12. <u>Execution in Counterparts</u>. This Agreement may be executed by the Parties in multiple counterparts, which taken together shall be deemed one original document.

(*SIGNATURES ON THE FOLLOWING PAGE*)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

Dated:                                      **SELLER:**

                                            BURNETT FAMILY FARMS, LLC,
                                            a California limited liability company

                                            By _____
                                            J. TRAVIS BURNETT
                                            Title:    Managing Member

Dated:                                      **BUYER:**

                                            MAVERICK SALOON SY, LLC,
                                            a California limited liability company

                                            By _____
                                            DEMETRIOS LOIZIDES
                                            Title:    Manager

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

Dated: _____

**SELLER:**

BURNETT FAMILY FARMS, LLC,
a California limited liability company

By _____
J. TRAVIS BURNETT
Title:  Managing Member

Dated: _____

**BUYER:**

MAVERICK SALOON SY, LLC,
a California limited liability company

By _Demetrios Loizides_____
DEMETRIOS LOIZIDES    BY DAVID SALGADY
Title:  Manager        HIS ATTORNEY IN FACT
                       8-23-17

# SCHEDULE 1.1.1.

## PERSONAL PROPERTY

- 1   CONTINENTIAL BEER REACH IN
- 1   TRUE BEER COOLER (TAP) SELF CONTAINED
- 1   POS SYSTEM W/ THREE TERMINALS
- 3   WELLS
- 1   3 COMPARTMENT SINK
- 1   HAND SINK
-     MISC STAINLESS
- 1   5X10 WOOD WALK IN W/ 4 TAP BEER SYSTEM
- 3   36" TV's
-     APPROX $15,000 IN CEILING STAPLED $
-     18 APPROX NEON BEER SIGNS
- 2   3X3 BAR TABLES
- 2   BAR STOOLS WOOD W. BACK
- 4   BAR STOOLS WOOD W/O BACK
- 16   RED BAR STOOLS
- 5   PICNIC TABLES W/ BENCHES
- 100   STACKABLE CHAIRS
-     MISC CAN LIGHTS
- 50-60   NEON SIGNS AND/OR PICTURES
- 34   AUTOGRAPHED CELEBRITY PICTURES
- 10   ROUND TABLES
- 30   CHAIRS
- 1   12X12 TUFF SHEDD
- 1   U SHAPED BAR W/ ISLAND

SCHEDULE 1.1.1.
TO
ASSET PURCHASE AGREEMENT

# SCHEDULE 1.2

## EXCLUDED ASSETS

[SELLER TO COMPLETE]



2222 Damon Street
Los Angeles, CA 90021
Tel: (213) 417-2341
Fax: (213) 417-2339

**MAVERICK SALOON SY, LLC**
**Attn: Jimmy Loizides**
**Via Email**

**Date: AUGUST 16, 2017**
**Escrow No.: 16703-AK**

RE:  License No. **48-469062**
     **JON TRAVIS BURNETT to MAVERICK SALOON SY, LLC**

For use in your escrow in this office, we would appreciate you sending the items listed below. Please sign and return as indicated on the documents, **please make a copy for your records**.

**PLEASE SIGN AND RETURN** the enclosed items:
   One (1) copy of Escrow Instructions dated **8/09/2017** Please initial each page of Escrow Instructions pages 1 – 3, and sign on page 4.
   Three (3) copies of Notice of Intended Transfer of Liquor License.
   One (1) copy of the 64B request.
   One (1) copy of Demand Note.
   One (1) copy of Statement Re: Consideration Deposited in Escrow.

   ALONG WITH THE ABOVE DOCUMENTS PLEASE REMIT A CHECK IN THE AMOUNT OF **$21,400.00**  MADE PAYABLE TO **ABC ESCROW** (Escrow Deposit **$20,000.00,** and Escrow Fee **$1,400.00**). Additional expenses will be billed before close of escrow.

**All documents should be signed EXACTLY as your name(s) appear.  Should your name(s) be misspelled, sign them correctly and advise us in writing when you return these papers.**

Should you have any questions, or require assistance, please do not hesitate to call. Thank you.

Very Truly Yours,

**ABC Escrow**

Amy Kwak
Sr. Escrow Officer

AK



2222 Damon Street
Los Angeles, CA 90021
Tel: (213) 417-2341 • F: (213) 417-2339
www.abcescrow.com
Amy@abcescrow.com

State of California- Department of Business Oversight

# ESCROW INSTRUCTIONS
## SALE OF ALCOHOLIC BEVERAGE CONTROL LICENSE

Date: August 9, 2017
Officer: Amy Kwak
Escrow No: 16703-AK

This instruction is given this **Ninth** day of **August, 2017**, by and between
**JON TRAVIS BURNETT**
**PREMISE ADDRESS: 3687 SAGUNTO ST D, Santa Ynez, CA 93460**
**LIQUOR LICENSE NO: 48-469062**
hereinafter known and designated as the **SELLER(S), and**

**MAVERICK SALOON SY, LLC**
**PREMISE ADDRESS: 3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**
hereinafter known and designated as the **BUYER(S),**

The above mentioned liquor license is the subject of this escrow, which Seller owns and agrees to sell and Buyer agrees to purchase from Seller, described as Alcoholic Beverage License: **ON-SALE GENERAL PUBLIC PREMISES** License Number **48-469062** to be transferred to Buyer's said premises on the following terms and conditions:

| Terms of Transaction | | |
|---|---|---|
| 1. **PURCHASE PRICE** | $ | **250,000.00** |
| **DEPOSIT** | $ | **20,000.00** |
| **BALANCE DUE** | $ | **230,000.00** |

Within thirty (30) days after application has been filed with the Department of Alcoholic Beverage Control, the Buyer agrees to deposit the balance of the purchase price as set out above plus any additional balance of funds due to Escrow Holder. Escrow Holder is instructed to then execute and forward the ABC form 226 to the Department of Alcoholic Beverage Control, indicating that the consideration has been deposited into the escrow.

2. **Subject to any precedent requirements, Seller and Buyer shall cause an application to be made for the transfer of the subject license at the proper office or offices of the Department of Alcoholic Beverage Control. Transfer fee to be paid by Buyer.**

3. Pursuant to Section 24073 of the Business and Professions Code of the State of California, Seller/Transferor and Buyer/Transferee will cause the Notice of Intended Transfer to be filed for record in the office of the county recorder in the county where the license is located, and provide a copy of said notice, certified by the county recorder, to be deposited with the Department of Alcoholic Beverage Control. The parties hereto authorize and instruct **ABC Escrow** to execute the Seller's signature on "Notice of Intended Transfer Liquor License" as accommodation to the parties in this escrow.

4. Escrow shall close upon issuance of said license to Buyer by the Department of Alcoholic Beverage Control.

5. The Escrow Holder discloses Craig Block has an affiliated interest in both **ABC Escrow**, and LiquorLicense.com.

If notified by the Department of Alcoholic Beverage Control that any tax agency under the provisions of Section 24049 of said Act has withheld the transfer and that nothing at the time of such notification is preventing the transfer except the release of such withhold, then the Escrow Holder is authorized and instructed to pay from funds in escrow the amount of taxes claimed due by any such agency and charge the Seller's account without further authorization required for doing so.

Upon notification to Escrow Holder by the Dept. of Alcoholic Beverage Control of approval of the transfer of the license, Escrow Holder shall furnish the Seller with a list of the claims filed in escrow prior to receipt of said notification. Unless Seller notifies Escrow Holder in writing to the contrary within ten (10) days after Escrow Holder have furnished said list, all claims appearing on said list, shall be construed by Escrow Holder as being bonafide and Escrow Holder is authorized and instructed to pay the same in accordance with Section 24074 of the Business & Professions Code of California.

**ADDITIONAL INSTRUCTION ATTACHED HERETO AND MADE A PART HEREOF**
*My initials below represent my agreement and acknowledgment of the foregoing.*

Buyer ____

Seller ____

Buyer agrees to pay 100% of the escrow fees and costs in this transaction. Further, 100% of the costs of processing claims and the payment of claims by taxing authorities and other creditors will be paid by the Seller as follows:

$ 25.00 -- for each claim received/entered into escrow.
$ 75.00 -- for each claim paid through escrow.
$250.00 -- for notification to claimants of disputed claims.

Seller Initials _____

Escrow Holder is authorized and instructed to disburse from Buyer's funds on deposit any amounts necessary for the payment of expenses which must be paid prior to the close of escrow, including but not limited to: recording fees, and overnight mail services. The parties acknowledge that though such disbursements are made from Buyer's funds on deposit, these payments may be made for the benefit of either the Seller or the Buyer to facilitate the closing of this escrow. These payments are not refundable whether this escrow closes or cancels and all parties acknowledge **ABC Escrow** shall have no responsibility or liability in connection with the recovery of Buyer's funds should a dispute arise between Buyer and Seller. At the close of escrow, Escrow Holder is authorized to charge the party for whom the expense was incurred and is released from any and all liability in connection with compliance with this instruction.

**Buyer herein understands that it is Buyer's responsibility to pay the license renewal fee in the amount of $876.00 or the prevailing rate to the Department of Alcoholic Beverage Control on or before March 31, 2018.**

Buyer Initials: _____

Escrow Holder is authorized and instructed to take a cancellation fee from funds on deposit as specified in this instruction and the additional cancellation instructions. Escrow Holder will disburse any remaining deposits to the parties specified in the instructions.

Buyer Initials: _____

Seller Initials: _____

**THIRD PARTY DEPOSITS:** Each party hereto hereby authorizes Escrow to accept deposits from third parties on behalf of either Buyer or Seller. In the event any funds on deposit with Escrow are to be paid to or on behalf of either Buyer or Seller upon termination of an escrow, and any portion of said funds on deposit have been deposited by a third party, the party on whose behalf the funds are to be paid (i.e., Buyer or Seller) shall, as a condition of Escrow's payment of such funds, provide Escrow with a written direction as to the person/entity to which said funds are to be paid, which direction shall be signed by both the party on whose behalf said funds are to be paid and the third party depositor.

Buyer Initials: _____

Seller Initials: _____

**ESCROW INSTRUCTIONS: ABC Escrow,** may accept Escrow Instructions executed in counterpart as separate originals, regardless of the date of their signing and delivery. Such counterparts together shall be construed as one and the same document. Escrow Agent, Seller, and Purchaser, and each of them, agree that this Agreement, all amendments hereto, notices and communications given in accordance herewith, may be executed in counterpart and transmitted by facsimile, **adobe/pdf** format or other similar media, each of which shall be deemed an original signed by the transmitting party, the authenticity of which signature(s) shall be deemed to be authenticity represented by the transmission.

**GENERAL PROVISIONS:** The Parties acknowledge that they have read, understood, and agreed to the General Provision of these Escrow Instructions, and that the Provisions as stated are fully incorporated into these Escrow Instructions. The undersigned state that they have read these instructions and understand and agree to them. Escrow Holders are not authorized to give legal advice. If you desire legal advice, consult your attorney before signing.

ADDITIONAL INSTRUCTION ATTACHED HERETO AND MADE A PART HEREOF
*My initials below represent my agreement and acknowledgment of the foregoing.*

Buyer _____

Seller _____

## ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS - GENERAL PROVISIONS

1. The parties hereby enter into this escrow at ABC Escrow, 2222 Damon Street, Los Angeles, CA 90021, hereafter referred to as Escrow Holder, for the purpose of completing this transaction in accordance with Sections 6101-6107 of the Uniform Commercial Code of California, Section 3440 of the California Civil Code, or such other law as may be applicable to the subject matter of this escrow.

2. No demand, alteration or amendment shall be binding on Escrow Holder unless given in writing, signed by all parties hereto and deposited with Escrow Holder.

3. Should any dispute arise between or among the parties hereto or third parties or should Escrow Holder receive conflicting demands with reference to the escrow, Escrow Holder may, at its option, but without limiting its other rights hereafter set forth, do either of the following.

   A. Stop all proceedings in the performance of this escrow and withhold delivery of documents or monies in its possession until such dispute or conflicting demands have been resolved and written proof thereof has been deposited in escrow.

   B. File an interpleader suit in any court of competent jurisdiction. Upon the filing of such suit, Escrow Holder shall be fully released and discharged of and from all obligations and liability in connection with the escrow, and the parties jointly and severally agree to pay Escrow Holder all costs, expenses, charges and actual attorneys' fees expended or incurred by Escrow Holder.

4. In the event Escrow Holder receives from any third party any claim or demand against any party hereto, and such claim or demand is denied or disallowed in whole or in part, Escrow Holder may notify the said claimant of such denial or disallowance and hold the money or documents of the party against whom the claim is made for a period of twenty-five (25) days. Should the claimant fail to cause a levy on the documents, funds, or assets of said party within the time so provided, Escrow Holder may, in its discretion, distribute funds or documents to the party against whom the claim or demand was made, without liability to any person for so doing.

5. The parties authorize Escrow Holder to pay from funds deposited in escrow all charges for publications, recordations, filings, and chattel and security interest searches when incurred. The parties authorize Escrow Holder to pay from funds deposited in escrow at the close thereof; or following notice of cancellation or rescission or following a failure of the parties to comply with the terms of this escrow, all escrow fees, attorneys' fees, or other charges incurred in connection with this escrow. The parties authorize Escrow Holder to pay from funds deposited in escrow costs and expenses incurred in connection with this escrow including, but not limited to, the actual cost of wire transfers, long distance telephone calls, messenger and other delivery fees, postage, and overnight mail, and charges by Escrow Holder in connection with facsimile transmissions, photocopying and other reproductions costs, document preparation, and document change fees in accordance with Escrow Holder's current scheduled rates, which rates are available to the parties upon request.

6. In the event that escrow receives cancellation instructions signed solely by the Buyer or the Seller, the parties agree that should the Escrow Holder not receive additional instructions within 120 days of receiving the initial cancellation instructions, the Escrow Holder shall deem the escrow cancelled and as such shall be authorized and entitled to the collect the escrow fees due for its services and to disburse any remaining deposits in accordance with specified in the instructions.

7. The parties acknowledge that Escrow Holder is a mere stakeholder as contemplated in Section 386.5 of the California Code of Civil Procedure, and Escrow Holder shall not be required to perform any services or duties except the safekeeping of money, instruments, or other documents received by it and the disposition of same in accordance with the written instructions accepted in this escrow. However, without further authorization, Escrow Holder may accept performance from the parties hereto after the time specifically provided for performance has passed.

8. Escrow Holder shall not be liable for any of the following:

   A. The sufficiency or correctness of form, content, execution or validity, or any instrument deposited in escrow;
   B. The identity, authority, or right of any person to execute the documents referred to in herein;
   C. The failure of the parties to comply with these instructions or any agreement or documents filed or referred to herein;
   D. Any exercise of discretion by Escrow Holder provided such exercise is authorized by these instructions;
   E. Inadvertent failure of Escrow Holder to comply with these instructions or any agreement or document filed or referred to herein;
   F. Fraud perpetrated by any person in connection with this escrow;
   G. Forgeries or false impersonations occurring in connection with this escrow.

9. Each party to this Escrow further warrants that any negotiable instrument ("Instrument") delivered to Escrow by or on behalf of such party ("Delivering Party") shall be honored upon presentation by Escrow. In the event such Instrument is not honored upon presentation, such Delivering Party shall be charged by Escrow a dishonored check fee of $25.00. Upon any Instrument not being honored upon any second attempt to negotiate such Instrument, Escrow requires such Delivering Party to deliver to Escrow a replacement cashier's check in the amount of the original Instrument, plus the dishonored Instrument fee. In the event a cashier's check is required by Escrow, at its sole discretion, to replace the opening deposit funds, then only a cashier's check will be accepted for payment of all further deposits into Escrow on behalf of such party.

10. The parties jointly and severally promise to indemnify and hold Escrow Holder harmless of and from all costs, charges, damages, claims, judgments, attorneys' fees, expenditures, obligations, expenses and liabilities of every kind and nature which Escrow Holder may incur or sustain in connection with this escrow. Escrow Holder is hereby given a lien upon all of the right, title and interest of all parties hereto in all escrow papers, documents and writings and other property and monies deposited in escrow to secure performance of the promises contained in this paragraph.

11. Except for claims which have been expressly disapproved by the party against whom made, or are subject to specific distribution rules (i.e., Business & Professions Code §24074, and/or paragraph 23 hereof), if the consideration to be received by such party is insufficient to pay in full the claims duly filed in escrow against such party, Escrow Holder may distribute the consideration pro rata to the claimants without further notice to, or authorization from, the parties hereto. Escrow Holder may deduct and pay from any and all monies deposited with it in this escrow the full amount of its costs, charges, expenses and fees prior to the pro rata distribution described hereinabove.

12. Should any paragraph, clause, or provision of this Agreement be construed or interpreted by a court of competent jurisdiction to be void, invalid, or unenforceable, such decision shall affect only the paragraph, clause or provision so construed or interpreted and shall in no event affect the remaining paragraphs, clauses or provisions of these instructions which shall remain valid, subsisting and enforceable.

### ADDITIONAL INSTRUCTION ATTACHED HERETO AND MADE A PART HEREOF
*My initials below represent my agreement and acknowledgment of the foregoing.*

Buyer _____

Seller _____

## ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS - GENERAL PROVISIONS

13. Should it become necessary for Escrow Holder to employ an attorney in connection with this escrow for consultation, drafting documents, sending notices or instituting, prosecuting, defending or responding to litigation (whether instituted by the parties, creditors or any third party concerning this escrow), the parties hereto do jointly and severally (a) agree to pay Escrow Holder on demand all attorney's fees and costs so incurred and reasonably determined by Escrow to be incurred (b) authorize Escrow Holder to deduct from any funds deposited with it and pay all attorney's fees and costs so incurred and reasonably determined by Escrow Holder to be incurred, and (c) if such deposited funds are unavailable due to, including but limited to, levy or execution, grant Escrow Holder a superior lien and security interest in and to all deposited funds held by Escrow Holder upon which such levy or execution applies, and which deposited funds Escrow Holder is required to deposit with any levying agency in the amount of all attorney's fees and costs so incurred and reasonably determined by Escrow Holder to be incurred.

14. You are hereby instructed by the parties to pay from the funds deposited in escrow, without notice to Seller, either at the close of escrow or prior to the close of escrow if payment is a condition precedent to the transfer of the Alcoholic Beverage License which is the subject of your escrow, the following claims against or indebtedness of the Seller, to-wit, taxes assessed whether or not designated as a hold against the transfer of the license, including but not limited to, taxes due under the Alcoholic Beverage Tax Law, the Sales and Use Tax Law, the Personal Income Tax Law, or the Bank and Corporation Tax Law, or taxes on unsecured property as defined in Section 134 of the Revenue and Taxation Code, provided such tax liability arose in full or in part out of the conduct of a business licensed by the Department of the Alcoholic Beverage Control. Payments pursuant to the above instructions made from funds deposited in escrow by the Buyer shall be credited upon the purchase price. No notice or further instructions from the parties shall be required by the Escrow Holder to make payments pursuant to the paragraph.

15. With respect to creditors' claims against the Seller, you are instructed as follows:
    A. You may accept creditors' claims until such time as the escrow has been notified by the Department of Alcoholic Beverage Control of its approval of the transfer of the subject license.
    B. You may accept creditors' claims filed by mail, fax, delivery, overnight mail, or via the internet at www.abcescrow.com or claims@abcescrow.com. You are instructed to pay timely filed creditors' claims pursuant to the provisions of the California Business and Professions Code Sections 24074 and 24074.1, as follows:
    C. After the requirements for the transfer of the license as provided in Section 24049 of the Business and Professions Code are satisfied, you shall pay out of the purchase price or consideration, the claims of the bonafide creditors of the licensee who file their claims with you before you are notified by the department of its approval of the transfer of the license, or if the purchase price or consideration is not sufficient to pay the claims in full, you shall distribute the consideration as follows:
        (i) First, to the United States for claims based on income or withholding taxes: and thereafter for claims based on any tax other than specified under Section 24049;
        (ii) Second, to the payment of claims for wages, salaries, or fringe benefits of employees of the Seller or Transferor earned or accruing prior to the sale, transfer or opening of an escrow for the sale thereof;
        (iii) Third, to the payment of secured creditors to the extent of the proceeds which arise from the sale of the security;
        (iv) Fourth, to the payment of claims on mechanics' liens;
        (v) Fifth, to the payment of escrow fees and the payment of claims for the prevailing brokerage fees for services rendered and claims for reasonable attorneys' fees for services rendered;
        (vi) Sixth, to the payment of claims for goods sold and delivered to the transferor for resale at this licensed premises and the payment of claims for services rendered, performed or supplied in connection with the operation of the licensed business; and to the payment of claims of a landlord, to the extent of proceeds on past-due rent;
        (vii) Seventh, to the payment of other claims which have been reduced to court-ordered judgments, including claims for support of a minor child;
        (viii) Eighth, to the payment of all other claims. The payment of these claims, if sufficient assets are not available for the claim in full, shall be pro rata.
    D. If the transferor licensee disputes any claim, you shall notify the claimant, and the amount of pro rate amount thereof shall be retained by the Escrow Holder for a period of twenty-five (25) days, and if not attached shall be paid to the transferor licensee. You shall make payment or distribution within a reasonable time after the completion of the transfer of license.

This Escrow Agreement is deemed to have been made in Los Angeles, CA and the place of performance is deemed to occur in Los Angeles, CA. Should any action be brought in connection with this Escrow Agreement, or among or between the parties to this Escrow Agreement pertaining to any matter in connection with this Escrow Agreement, venue is agreed to be proper only in Los Angeles, CA. This Escrow Agreement incorporates and contains the full and final expression of all of the terms of this Agreement, and supersedes all prior and contemporaneous oral understandings or agreements of the parties. This Agreement, and all documents requiring signature in connection with this Escrow Agreement, will be considered signed by a party when the signature of such party is delivered by mail, delivery, facsimile or electronic (i.e., e-mail) transmission. Any such signature transmission shall be treated in all respects as an original signature. © ABCEscrow.com All Rights Reserved. Proprietary & Confidential. May Not Be Duplicated Without Written Permission.

IN WITNESS WHEREOF, the parties have executed this document on _____,20_____.

BUYER

SELLER

MAVERICK SALOON SY, LLC

JON TRAVIS BURNETT

By: _____

**\*\*END OF INSTRUCTIONS\*\***

Print Name & Title_____

RECORDING REQUESTED BY

**ABC ESCROW COMPANY**

www.abcescrow.com
claims@abcescrow.com

WHEN RECORDED MAIL TO:

NAME
**ABC Escrow**

MAILING ADDRESS (Street number and name)
**2222 Damon Street**

| CITY | STATE | ZIP CODE |
|------|-------|----------|
| Los Angeles | CA | 90021 |

Escrow No. 16703-AK

**DO NOT WRITE IN THE SPACE ABOVE.** Government Code
Section 27361.6 reserves space above for exclusive use of County Recorder.

# NOTICE OF INTENDED TRANSFER OF RETAIL ALCOHOLIC BEVERAGE LICENSE UNDER SECTIONS 24073 AND 24074 CALIFORNIA BUSINESS AND PROFESSIONS CODE

*Read instructions before completing.*

1. LICENSEE(S) NAME(S) *(Seller)*
   **JON TRAVIS BURNETT**

2. PREMISES ADDRESS TO WHICH LICENSE(S) HAS/HAVE BEEN ISSUED
   **3687 SAGUNTO ST D, Santa Ynez, CA 93460**

3. LICENSEE'S MAILING ADDRESS *(if different)*

4. APPLICANT(S) NAME *(Transferee or Buyer)*
   **MAVERICK SALOON SY, LLC**

5. PROPOSED BUSINESS ADDRESS *(if different than Item 2)*
   **3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

6. MAILING ADDRESS OF APPLICANT
   **291 NIETO AVE, LONG BEACH, CA 90803**

7. KIND OF LICENSE INTENDED TO BE TRANSFERRED
   **ON-SALE GENERAL PUBLIC PREMISES** License No. **48-469062**

8. ESCROW HOLDER/GUARANTOR NAME
   **ABC Escrow**

9. ESCROW HOLDER/GUARANTOR ADDRESS
   **2222 Damon Street, Los Angeles, CA, 90021**

10. TOTAL CONSIDERATION TO BE PAID FOR THE BUSINESS AND LICENSE INCLUDING INVENTORY, WHETHER ACTUAL COST, ESTIMATED COST, OR A NOT-TO-EXCEED AMOUNT

| | | |
|---|---|---|
| CASH | $ | 20,000.00 |
| DEMAND NOTE | | 230,000.00 |
| PROMISSORY NOTES | | |
| TANGIBLE AND/OR INTANGIBLE PROPERTY | | |
| **TOTAL AMOUNT** | $ | 250,000.00 |

The parties agree that the consideration for the transfer of the business and the license(s) is to be paid only after the Department Of Alcoholic Beverage Control has approved the proposed transfer. The parties also agree and herein direct the above-named Escrow Holder to make payment or distribution within a reasonable time after the completion of the transfer of the license as Provided in Section 24074 of the California Business and Professions Code.

| LICENSEE'S SIGNATURE (Transferor or Seller) JON TRAVIS BURNETT | DATE SIGNED |
|---|---|
| APPLICANT'S SIGNATURE (Transferee or Buyer) MAVERICK SALOON SY, LLC | DATE SIGNED |

*One copy of this notice, __CERTIFIED__ by the County Recorder, together with an additional copy must accompany the application for the transfer of the license.*

ABC-227 Reproduced by SMS (11/99)

State of California, Department of Alcoholic Beverage Control

RECORDING REQUESTED BY

**ABC ESCROW COMPANY**

www.abcescrow.com
claims@abcescrow.com

WHEN RECORDED MAIL TO:

NAME
**ABC Escrow**

MAILING ADDRESS (Street number and name
**2222 Damon Street**

| CITY | STATE | ZIP CODE |
|------|-------|----------|
| Los Angeles | CA | 90021 |

Escrow No. 16703-AK

DO NOT WRITE IN THE SPACE ABOVE.　　Government Code
Section 27361.6 reserves space above for exclusive use of County Recorder.

# NOTICE OF INTENDED TRANSFER OF RETAIL ALCOHOLIC BEVERAGE LICENSE UNDER SECTIONS 24073 AND 24074 CALIFORNIA BUSINESS AND PROFESSIONS CODE

*Read instructions before completing.*

1. LICENSEE(S) NAME(S) (Seller)
   **JON TRAVIS BURNETT**

2. PREMISES ADDRESS TO WHICH LICENSE(S) HAS/HAVE BEEN ISSUED
   **3687 SAGUNTO ST D, Santa Ynez, CA 93460**

3. LICENSEE'S MAILING ADDRESS (if different)

4. APPLICANT(S) NAME (Transferee or Buyer)
   **MAVERICK SALOON SY, LLC**

5. PROPOSED BUSINESS ADDRESS (if different than Item 2)
   **3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

6. MAILING ADDRESS OF APPLICANT
   **291 NIETO AVE, LONG BEACH, CA 90803**

7. KIND OF LICENSE INTENDED TO BE TRANSFERRED
   **ON-SALE GENERAL PUBLIC PREMISES** License No. **48-469062**

8. ESCROW HOLDER/GUARANTOR NAME
   **ABC Escrow**

9. ESCROW HOLDER/GUARANTOR ADDRESS
   **2222 Damon Street, Los Angeles, CA, 90021**

10. TOTAL CONSIDERATION TO BE PAID FOR THE BUSINESS AND LICENSE INCLUDING INVENTORY, WHETHER ACTUAL COST, ESTIMATED COST, OR A NOT-TO-EXCEED AMOUNT

| | | |
|---|---|---|
| CASH | $ | 20,000.00 |
| DEMAND NOTE | | 230,000.00 |
| PROMISSORY NOTES | | |
| TANGIBLE AND/OR INTANGIBLE PROPERTY | | |
| TOTAL AMOUNT | $ | 250,000.00 |

The parties agree that the consideration for the transfer of the business and the license(s) is to be paid only after the Department Of Alcoholic Beverage Control has approved the proposed transfer. The parties also agree and herein direct the above-named Escrow Holder to make payment or distribution within a reasonable time after the completion of the transfer of the license as Provided in Section 24074 of the California Business and Professions Code.

| LICENSEE'S SIGNATURE (Transferor or Seller) JON TRAVIS BURNETT | DATE SIGNED |
|---|---|
| APPLICANT'S SIGNATURE (Transferee or Buyer) MAVERICK SALOON SY, LLC | DATE SIGNED |

*One copy of this notice, **CERTIFIED** by the County Recorder, together with an additional copy must accompany the application for the transfer of the license.*

ABC-227 Reproduced by SMS (11/99)

State of California, Department of Alcoholic Beverage Control

RECORDING REQUESTED BY
**ABC ESCROW COMPANY**

www.abcescrow.com
claims@abcescrow.com

**WHEN RECORDED MAIL TO:**

NAME
**ABC Escrow**

MAILING ADDRESS (Street number and name)
2222 Damon Street

| CITY | STATE | ZIP CODE |
|---|---|---|
| Los Angeles | CA | 90021 |

Escrow No. 16703-AK

**DO NOT WRITE IN THE SPACE ABOVE.** Government Code
Section 27361.6 reserves space above for exclusive use of County Recorder.

# NOTICE OF INTENDED TRANSFER OF RETAIL ALCOHOLIC BEVERAGE LICENSE UNDER SECTIONS 24073 AND 24074 CALIFORNIA BUSINESS AND PROFESSIONS CODE

*Read instructions before completing.*

1. LICENSEE(S) NAME(S) (Seller)
**JON TRAVIS BURNETT**

2. PREMISES ADDRESS TO WHICH LICENSE(S) HAS/HAVE BEEN ISSUED
3687 SAGUNTO ST D, Santa Ynez, CA 93460

3. LICENSEE'S MAILING ADDRESS (if different)

4. APPLICANT(S) NAME (Transferee or Buyer)
**MAVERICK SALOON SY, LLC**

5. PROPOSED BUSINESS ADDRESS (if different than item 2)
3687 SAGUNTO ST D, SANTA YNEZ, CA 93460

6. MAILING ADDRESS OF APPLICANT
291 NIETO AVE, LONG BEACH, CA 90803

7. KIND OF LICENSE INTENDED TO BE TRANSFERRED
**ON-SALE GENERAL PUBLIC PREMISES** License No. 48-469062

8. ESCROW HOLDER/GUARANTOR NAME
**ABC Escrow**

9. ESCROW HOLDER/GUARANTOR ADDRESS
2222 Damon Street, Los Angeles, CA, 90021

10. TOTAL CONSIDERATION TO BE PAID FOR THE BUSINESS AND LICENSE INCLUDING INVENTORY, WHETHER ACTUAL COST, ESTIMATED COST, OR A NOT-TO-EXCEED AMOUNT

| | | |
|---|---|---|
| CASH | $ | 20,000.00 |
| DEMAND NOTE | | 230,000.00 |
| PROMISSORY NOTES | | |
| TANGIBLE AND/OR INTANGIBLE PROPERTY | | |
| TOTAL AMOUNT | $ | 250,000.00 |

The parties agree that the consideration for the transfer of the business and the license(s) is to be paid only after the Department Of Alcoholic Beverage Control has approved the proposed transfer. The parties also agree and herein direct the above-named Escrow Holder to make payment or distribution within a reasonable time after the completion of the transfer of the license as Provided in Section 24074 of the California Business and Professions Code.

LICENSEE'S SIGNATURE (Transferor or Seller) JON TRAVIS BURNETT                DATE SIGNED

APPLICANT'S SIGNATURE(Transferee or Buyer) MAVERICK SALOON SY, LLC            DATE SIGNED

*One copy of this notice, **CERTIFIED** by the County Recorder, together with an additional copy must accompany the application for the transfer of the license.*

ABC-227 Reproduced by SMS (11/99)                State of California, Department of Alcoholic Beverage Control

# DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL

August 16, 2017

Re:     Applicant:              **MAVERICK SALOON SY, LLC**

        Applicant Premises:     **3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

        Transferor:             **JON TRAVIS BURNETT**

        Transferor's License No.  48-469062

        **ABC Escrow**          Escrow No. **16703-AK**

Gentlemen:

This is directed to the Department at the request of the undersigned applicant(s) and transferor(s) that the subject license applied for under the provisions of Section 24044 of the Alcoholic Beverage Control Act be issued pursuant to Rule 64(b) of the Department's Rules, and that notice or advisement thereof be directed to:

**ABC Escrow**
**2222 Damon Street**
**Los Angeles, CA, 90021**

The applicant acknowledge that following the transfer of the license it is his responsibility, as licensee to:
   a.  Place the license in use at his approved premises on or before the approved expected completion date of his construction, or such extended date, if any, as the Department, in its discretion, may grant.
   b.  Pay to the Department any annual renewal fee when due whether or not he has placed the license in use at said premises.
   c.  That in the event he fails, without good cause, to place the license in use as intended a subsequent transfer of the license will be allowed only at the discretion of the department.

In making this petition to have the license issued, the applicant further states that he is fully prepared to effect the completion of this premises and the use of the license not later than the approved expected completion date, or such approved extended date, and agrees that is anything beyond his control prevents him from doing so, he will not enter into any agreement to sell the license for an amount greater than he paid for it.

MAVERICK SALOON SY, LLC                          JON TRAVIS BURNETT

By:

DO NOT DESTROY THIS NOTE: When paid, it must be surrendered.

# DEMAND NOTE

THIS NOTE IS GIVEN AND DEPOSITED IN ESCROW WITH **ABC ESCROW** TO MEET AND COMPLY WITH THE PROVISIONS OF SECTION 24074 BUSINESS & PROFESSIONS CODE and/or SECTION 6106.4 UNIFORM COMMERCIAL CODE, STATE OF CALIFORNIA, TO THE EXTENT THAT EITHER OR BOTH MAY APPLY IN THE ESCROW FOR WHICH THIS NOTE IS GIVEN.

If the amount hereof, in whole or in part, pursuant to such provisions and/o Rules or Regulations imposed hereunder, is intended to include inventory of stock in trade the precise sum of which is not known at the date hereof, then the amount payable hereunder shall be deemed adjusted up or down by the amount by which said inventory, when know, exceeds or is less than that estimated in determining the face amount hereof.

**$230,000.00**                              **Los Angeles**, California                              August 16, 2017

ON DEMAND, FOR VALUE RECEIVED, I PROMISE TO PAY TO:

**JON TRAVIS BURNETT**

OR ORDER, AT ABC Escrow, 2222 Damon Street   , Los Angeles, CA, 90021, through and in accordance with the terms set forth in their Escrow No. 16703-AK, the sum of:

**TWO HUNDRED THIRTY THOUSAND AND 00/100 DOLLARS**

THIS NOTE SHALL BEAR NO INTEREST IF PAID AS PRESCRIBED, OTHERWISE SHALL BEAR INTEREST ON THE UNPAID AMOUNT AT THE RATE OF SEVEN PERCENT PER ANNUM FROM DATE OF DEFAULT. PRINCIPAL AND INTEREST SHALL BE PAYABLE IN LAWFUL MONEY OF THE UNITED STATES. IF ACTION SHOULD BE INSTITUTED TO ENFORCE PAYMENT OF THIS NOTE, I PROMISE TO PAY SUCH SUM AS THE COURT MAY FIX AS ATTORNEY'S FEES.

MAVERICK SALOON SY, LLC

_____

By:

Department of Alcoholic Beverage Control
# STATEMENT RE CONSIDERATION
# DEPOSITED IN ESCROW

State of California

| TRANSFEROR |
| --- |
| **JON TRAVIS BURNETT** |
| TRANSFEROR'S LICENSE NUMBER |
| **48-469062** |

## SECTION I: APPLICANT'S STATEMENT THAT CONSIDERATION HAS BEEN DEPOSITED IN ESCROW

| ESCROW NUMBER NAME AND ADDRESS (Street, number and name, city, state, zip) | APPLICANT NAME AND PREMISES ADDRESS (Street number and name, city, zip) |
| --- | --- |
| ABC Escrow | **MAVERICK SALOON SY, LLC** |
| 2222 Damon Street | **3687 SAGUNTO ST D, SANTA YNEZ, CA 93460** |
| Los Angeles, CA 90021 | |

The above designated applicant states that he is the intended transferee of a retail license, and submits the following statement pursuant to the provisions of Section 24074.3 of the Alcoholic Beverage Control Act:

> I hereby state that the purchase price or consideration, as set forth in the escrow agreement required by Section 24074 of the Alcoholic Beverage Act is deposited with the Escrow Holder named above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at _____, California, this _____ day of _____

APPLICANT(S) SIGNATURE

**X**

Applicant(s) hereby instruct(s) the Escrow Holder to transmit this statement to the Department of Alcoholic Beverage Control when the Escrow Holder executes Section II of this document. At that time a copy must also be sent to the transferor.

## SECTION II: ESCROW HOLDER'S NOTIFICATION TO THE DEPARTMENT THAT LICENSE MAY TRANSFER

To the Department of Alcoholic Beverage Control:
    In connection with the transfer of the Alcoholic Beverage License described above, please be advised that the total consideration set forth in the recorded notice has been deposited in escrow and that all cash required by the escrow instructions to be deposited prior to the close of escrow has in fact been deposited, and/or the Escrow Holder has the unconditional written assurance of a responsible lender that funds will be deposited in escrow forthwith upon issuance of license.
    Escrow Holder certifies that disbursement of the consideration provided for in escrow instructions will not establish a preference for any creditor of the transferor except as provided for by Section 24074 of the Alcoholic Beverage Control Act.

ESCROW HOLDER: Mail original and two copies to:
    **Department of Alcoholic Beverage Control**

| ESCROW HOLDER SIGNATURE | ESCROW NUMBER | DATE SIGNED |
| --- | --- | --- |
| **X** | 16703-AK | |

## SECTION III: DEPARTMENT'S NOTICE TO ESCROW HOLDER THAT LICENSE HAS TRANSFERRED
### (For Department use only)

| LICENSE NUMBER | | DATE SIGNED |
| --- | --- | --- |
| | | |

This notice, submitted in fulfillment of the provisions of Section 24074 of the Alcoholic Beverage Control Act will serve to confirm that the transferor's license was transferred as shown above.

LICENSING SUPERVISOR SIGNATURE (Department of Alcoholic Beverage Control)

**X**

ABC-226 (5/00) Reproduced by SMS (3/04)



2222 Damon Street
Los Angeles, CA 90021
Tel: (213) 417-2341
Fax: (213) 417-2339

**Jon T. Burnett**
**Via Email**

Date: August 16, 2017
**Escrow No.: 16703-AK**

RE: License No. **48-469062**
   **JON TRAVIS BURNETT** to **MAVERICK SALOON SY, LLC**

For use in your escrow in this office, we would appreciate you sending the items listed below. Please sign and return as indicated on the documents, <u>please make a copy for your records</u>.

**PLEASE SIGN AND RETURN** the enclosed items:

   One (1) original signed copy of Escrow Instructions. Please initial each page of Escrow Instructions pages 1 – 3, and sign your name as printed on page 4.
   Three (3) original signed copies of Notice of Intended Transfer of Liquor License.
   One (1) original signed copy of the 64B request.

**MUST BE SIGNED AND ACKNOWLEDGED, BEFORE A NOTARY PUBLIC** <u>Exactly</u> as your name(s) appear on the enclosed items:

   **Two (2) original signed copies of License Transfer Request (Form ABC 211A).**

**All documents should be signed EXACTLY as your name(s) appear. Should your name(s) be misspelled, <u>sign them correctly and advise us in writing</u> when you return these documents.**

Should you have any questions, or require assistance, please do not hesitate to call. Thank You.

Very Truly Yours,

**ABC Escrow**

Amy Kwak
Sr. Escrow Officer

AK



2222 Damon Street
Los Angeles, CA 90021
Tel: (213) 417-2341 • F: (213) 417-2339
www.abcescrow.com
Amy@abcescrow.com

State of California- Department of Business Oversight

# ESCROW INSTRUCTIONS
## SALE OF ALCOHOLIC BEVERAGE CONTROL LICENSE

Date: **August 9, 2017**
Officer: **Amy Kwak**
Escrow No: **16703-AK**

This instruction is given this **Ninth** day of **August, 2017**, by and between
**JON TRAVIS BURNETT**
**PREMISE ADDRESS: 3687 SAGUNTO ST D, Santa Ynez, CA 93460**
**LIQUOR LICENSE NO: 48-469062**
hereinafter known and designated as the **SELLER(S), and**

**MAVERICK SALOON SY, LLC**
**PREMISE ADDRESS: 3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**
hereinafter known and designated as the **BUYER(S),**

The above mentioned liquor license is the subject of this escrow, which Seller owns and agrees to sell and Buyer agrees to purchase from Seller, described as Alcoholic Beverage License: **ON-SALE GENERAL PUBLIC PREMISES** License Number **48-469062** to be transferred to Buyer's said premises on the following terms and conditions:

| Terms of Transaction | | |
|---|---|---|
| 1. **PURCHASE PRICE** | $ | 250,000.00 |
| **DEPOSIT** | $ | 20,000.00 |
| **BALANCE DUE** | $ | 230,000.00 |

Within thirty (30) days after application has been filed with the Department of Alcoholic Beverage Control, the Buyer agrees to deposit the balance of the purchase price as set out above plus any additional balance of funds due to Escrow Holder. Escrow Holder is instructed to then execute and forward the ABC form 226 to the Department of Alcoholic Beverage Control, indicating that the consideration has been deposited into the escrow.

2. **Subject to any precedent requirements, Seller and Buyer shall cause an application to be made for the transfer of the subject license at the proper office or offices of the Department of Alcoholic Beverage Control. Transfer fee to be paid by Buyer.**

3. Pursuant to Section 24073 of the Business and Professions Code of the State of California, Seller/Transferor and Buyer/Transferee will cause the Notice of Intended Transfer to be filed for record in the office of the county recorder in the county where the license is located, and provide a copy of said notice, certified by the county recorder, to be deposited with the Department of Alcoholic Beverage Control. The parties hereto authorize and instruct **ABC Escrow** to execute the Seller's signature on "Notice of Intended Transfer Liquor License" as accommodation to the parties in this escrow.

4. Escrow shall close upon issuance of said license to Buyer by the Department of Alcoholic Beverage Control.

5. The Escrow Holder discloses Craig Block has an affiliated interest in both **ABC Escrow**, and LiquorLicense.com.

If notified by the Department of Alcoholic Beverage Control that any tax agency under the provisions of Section 24049 of said Act has withheld the transfer and that nothing at the time of such notification is preventing the transfer except the release of such withhold, then the Escrow Holder is authorized and instructed to pay from funds in escrow the amount of taxes claimed due by any such agency and charge the Seller's account without further authorization required for doing so.

Upon notification to Escrow Holder by the Dept. of Alcoholic Beverage Control of approval of the transfer of the license, Escrow Holder shall furnish the Seller with a list of the claims filed in escrow prior to receipt of said notification. Unless Seller notifies Escrow Holder in writing to the contrary within ten (10) days after Escrow Holder have furnished said list, all claims appearing on said list, shall be construed by Escrow Holder as being bonafide and Escrow Holder is authorized and instructed to pay the same in accordance with Section 24074 of the Business & Professions Code of California.

**ADDITIONAL INSTRUCTION ATTACHED HERETO AND MADE A PART HEREOF**
*My initials below represent my agreement and acknowledgment of the foregoing.*

Buyer _____

Seller _____

Buyer agrees to pay 100% of the escrow fees and costs in this transaction. Further, 100% of the costs of processing claims and the payment of claims by taxing authorities and other creditors will be paid by the Seller as follows:

    $ 25.00 -- for each claim received/entered into escrow.
    $ 75.00 -- for each claim paid through escrow.
    $250.00 -- for notification to claimants of disputed claims.    Seller Initials _____

Escrow Holder is authorized and instructed to disburse from Buyer's funds on deposit any amounts necessary for the payment of expenses which must be paid prior to the close of escrow, including but not limited to: recording fees, and overnight mail services. The parties acknowledge that though such disbursements are made from Buyer's funds on deposit, these payments may be made for the benefit of either the Seller or the Buyer to facilitate the closing of this escrow. These payments are not refundable whether this escrow closes or cancels and all parties acknowledge **ABC Escrow** shall have no responsibility or liability in connection with the recovery of Buyer's funds should a dispute arise between Buyer and Seller. At the close of escrow, Escrow Holder is authorized to charge the party for whom the expense was incurred and is released from any and all liability in connection with compliance with this instruction.

**<u>Buyer herein understands that it is Buyer's responsibility to pay the license renewal fee in the amount of $876.00 or the prevailing rate to the Department of Alcoholic Beverage Control on or before March 31, 2018.</u>**

    **Buyer Initials:** _____

Escrow Holder is authorized and instructed to take a cancellation fee from funds on deposit as specified in this instruction and the additional cancellation instructions. Escrow Holder will disburse any remaining deposits to the parties specified in the instructions.

    Buyer Initials: _____        Seller Initials: _____

**THIRD PARTY DEPOSITS:** Each party hereto hereby authorizes Escrow to accept deposits from third parties on behalf of either Buyer or Seller. In the event any funds on deposit with Escrow are to be paid to or on behalf of either Buyer or Seller upon termination of an escrow, and any portion of said funds on deposit have been deposited by a third party, the party on whose behalf the funds are to be paid (i.e., Buyer or Seller) shall, as a condition of Escrow's payment of such funds, provide Escrow with a written direction as to the person/entity to which said funds are to be paid, which direction shall be signed by both the party on whose behalf said funds are to be paid and the third party depositor.

    Buyer Initials: _____        Seller Initials: _____

**ESCROW INSTRUCTIONS: ABC Escrow,** may accept Escrow Instructions executed in counterpart as separate originals, regardless of the date of their signing and delivery. Such counterparts together shall be construed as one and the same document. Escrow Agent, Seller, and Purchaser, and each of them, agree that this Agreement, all amendments hereto, notices and communications given in accordance herewith, may be executed in counterpart and transmitted by facsimile, **adobe/pdf** format or other similar media, each of which shall be deemed an original signed by the transmitting party, the authenticity of which signature(s) shall be deemed to be authenticity represented by the transmission.

**GENERAL PROVISIONS:** The Parties acknowledge that they have read, understood, and agreed to the General Provision of these Escrow Instructions, and that the Provisions as stated are fully incorporated into these Escrow Instructions. The undersigned state that they have read these instructions and understand and agree to them. Escrow Holders are not authorized to give legal advice. If you desire legal advice, consult your attorney before signing.

**ADDITIONAL INSTRUCTION ATTACHED HERETO AND MADE A PART HEREOF**
*My initials below represent my agreement and acknowledgment of the foregoing.*

Buyer _____

Seller _____

## ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS - GENERAL PROVISIONS

1. The parties hereby enter into this escrow at ABC Escrow, **2222 Damon Street, Los Angeles, CA 90021**, hereafter referred to as Escrow Holder, for the purpose of completing this transaction in accordance with Sections 6101-6107 of the Uniform Commercial Code of California, Section 3440 of the California Civil Code, or such other law as may be applicable to the subject matter of this escrow.

2. No demand, alteration or amendment shall be binding on Escrow Holder unless given in writing, signed by all parties hereto and deposited with Escrow Holder.

3. Should any dispute arise between or among the parties hereto or third parties or should Escrow Holder receive conflicting demands with reference to the escrow, Escrow Holder may, at its option, but without limiting its other rights hereafter set forth, do either of the following.

   A. Stop all proceedings in the performance of this escrow and withhold delivery of documents or monies in its possession until such dispute or conflicting demands have been resolved and written proof thereof has been deposited in escrow.

   B. File an interpleader suit in any court of competent jurisdiction. Upon the filing of such suit, Escrow Holder shall be fully released and discharged of and from all obligations and liability in connection with the escrow, and the parties jointly and severally agree to pay Escrow Holder all costs, expenses, charges and actual attorneys' fees expended or incurred by Escrow Holder.

4. In the event Escrow Holder receives from any third party any claim or demand against any party hereto, and such claim or demand is denied or disallowed in whole or in part, Escrow Holder may notify the said claimant of such denial or disallowance and hold the money or documents of the party against whom the claim is made for a period of twenty-five (25) days. Should the claimant fail to cause a levy on the documents, funds, or assets of said party within the time so provided, Escrow Holder may, in its discretion, distribute funds or documents to the party against whom the claim or demand was made, without liability to any person for so doing.

5. The parties authorize Escrow Holder to pay from funds deposited in escrow all charges for publications, recordations, filings, and chattel and security interest searches when incurred. The parties authorize Escrow Holder to pay from funds deposited in escrow at the close thereof; or following notice of cancellation or rescission or following a failure of the parties to comply with the terms of this escrow, all escrow fees, attorneys' fees, or other charges incurred in connection with this escrow. The parties authorize Escrow Holder to pay from funds deposited in escrow costs and expenses incurred in connection with this escrow including, but not limited to, the actual cost of wire transfers, long distance telephone calls, messenger and other delivery fees, postage, and overnight mail, and charges by Escrow Holder in connection with facsimile transmissions, photocopying and other reproductions costs, document preparation, and document change fees in accordance with Escrow Holder's current scheduled rates, which rates are available to the parties upon request.

6. In the event that escrow receives cancellation instructions signed solely by the Buyer or the Seller, the parties agree that should the Escrow Holder not receive additional instructions within 120 days of receiving the initial cancellation instructions, the Escrow Holder shall deem the escrow cancelled and as such shall be authorized and entitled to the collect the escrow fees due for its services and to disburse any remaining deposits in accordance with specified in the instructions.

7. The parties acknowledge that Escrow Holder is a mere stakeholder as contemplated in Section 386.5 of the California Code of Civil Procedure, and Escrow Holder shall not be required to perform any services or duties except the safekeeping of money, instruments, or other documents received by it and the disposition of same in accordance with the written instructions accepted in this escrow. However, without further authorization, Escrow Holder may accept performance from the parties hereto after the time specifically provided for performance has passed.

8. Escrow Holder shall not be liable for any of the following:

   A. The sufficiency or correctness of form, content, execution or validity, or any instrument deposited in escrow;

   B. The identity, authority, or right of any person to execute the documents referred to in herein;

   C. The failure of the parties to comply with these instructions or any agreement or documents filed or referred to herein;

   D. Any exercise of discretion by Escrow Holder provided such exercise is authorized by these instructions;

   E. Inadvertent failure of Escrow Holder to comply with these instructions or any agreement or document filed or referred to herein;

   F. Fraud perpetrated by any person in connection with this escrow;

   G. Forgeries or false impersonations occurring in connection with this escrow.

9. Each party to this Escrow further warrants that any negotiable instrument ("Instrument") delivered to Escrow by or on behalf of such party ("Delivering Party") shall be honored upon presentation by Escrow. In the event such Instrument is not honored upon presentation, such Delivering Party shall be charged by Escrow a dishonored check fee of $25.00. Upon any Instrument not being honored upon any second attempt to negotiate such Instrument, Escrow requires such Delivering Party to deliver to Escrow a replacement cashier's check in the amount of the original Instrument, plus the dishonored Instrument fee. In the event a cashier's check is required by Escrow, at its sole discretion, to replace the opening deposit funds, then only a cashier's check will be accepted for payment of all further deposits into Escrow on behalf of such party.

10. The parties jointly and severally promise to indemnify and hold Escrow Holder harmless of and from all costs, charges, damages, claims, judgments, attorneys' fees, expenditures, obligations, expenses and liabilities of every kind and nature which Escrow Holder may incur or sustain in connection with this escrow. Escrow Holder is hereby given a lien upon all of the right, title and interest of all parties hereto in all escrow papers, documents and writings and other property and monies deposited in escrow to secure performance of the promises contained in this paragraph.

11. Except for claims which have been expressly disapproved by the party against whom made, or are subject to specific distribution rules (i.e., Business & Professions Code §24074, and/or paragraph 23 hereof), if the consideration to be received by such party is insufficient to pay in full the claims duly filed in escrow against such party, Escrow Holder may distribute the consideration pro rata to the claimants without further notice to, or authorization from, the parties hereto. Escrow Holder may deduct and pay from any and all monies deposited with it in this escrow the full amount of its costs, charges, expenses and fees prior to the pro rata distribution described hereinabove.

12. Should any paragraph, clause, or provision of this Agreement be construed or interpreted by a court of competent jurisdiction to be void, invalid, or unenforceable, such decision shall affect only the paragraph, clause or provision so construed or interpreted and shall in no event affect the remaining paragraphs, clauses or provisions of these instructions which shall remain valid, subsisting and enforceable.

### ADDITIONAL INSTRUCTION ATTACHED HERETO AND MADE A PART HEREOF
*My initials below represent my agreement and acknowledgment of the foregoing.*

Buyer _____

Seller _____

## ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS - GENERAL PROVISIONS

13. Should it become necessary for Escrow Holder to employ an attorney in connection with this escrow for consultation, drafting documents, sending notices or instituting, prosecuting, defending or responding to litigation (whether instituted by the parties, creditors or any third party concerning this escrow), the parties hereto do jointly and severally (a) agree to pay Escrow Holder on demand all attorney's fees and costs so incurred and reasonably determined by Escrow to be incurred (b) authorize Escrow Holder to deduct from any funds deposited with it and pay all attorney's fees and costs so incurred and reasonably determined by Escrow Holder to be incurred, and (c) if such deposited funds are unavailable due to, including but limited to, levy or execution, grant Escrow Holder a superior lien and security interest in and to all deposited funds held by Escrow Holder upon which such levy or execution applies, and which deposited funds Escrow Holder is required to deposit with any levying agency in the amount of all attorney's fees and costs so incurred and reasonably determined by Escrow Holder to be incurred.

14. You are hereby instructed by the parties to pay from the funds deposited in escrow, without notice to Seller, either at the close of escrow or prior to the close of escrow if payment is a condition precedent to the transfer of the Alcoholic Beverage License which is the subject of your escrow, the following claims against or indebtedness of the Seller, to-wit, taxes assessed whether or not designated as a hold against the transfer of the license, including but not limited to, taxes due under the Alcoholic Beverage Tax Law, the Sales and Use Tax Law, the Personal Income Tax Law, or the Bank and Corporation Tax Law, or taxes on unsecured property as defined in Section 134 of the Revenue and Taxation Code, provided such tax liability arose in full or in part out of the conduct of a business licensed by the Department of the Alcoholic Beverage Control. Payments pursuant to the above instructions made from funds deposited in escrow by the Buyer shall be credited upon the purchase price. No notice or further instructions from the parties shall be required by the Escrow Holder to make payments pursuant to the paragraph.

15. With respect to creditors' claims against the Seller, you are instructed as follows:
    A. You may accept creditors' claims until such time as the escrow has been notified by the Department of Alcoholic Beverage Control of its approval of the transfer of the subject license.
    B. You may accept creditors' claims filed by mail, fax, delivery, overnight mail, or via the internet at www.abcescrow.com or claims@abcescrow.com. You are instructed to pay timely filed creditors' claims pursuant to the provisions of the California Business and Professions Code Sections 24074 and 24074.1, as follows:
    C. After the requirements for the transfer of the license as provided in Section 24049 of the Business and Professions Code are satisfied, you shall pay out of the purchase price or consideration, the claims of the bonafide creditors of the licensee who file their claims with you before you are notified by the department of its approval of the transfer of the license, or if the purchase price or consideration is not sufficient to pay the claims in full, you shall distribute the consideration as follows:
        (i) First, to the United States for claims based on income or withholding taxes: and thereafter for claims based on any tax other than specified under Section 24049;
        (ii) Second, to the payment of claims for wages, salaries, or fringe benefits of employees of the Seller or Transferor earned or accruing prior to the sale, transfer or opening of an escrow for the sale thereof;
        (iii) Third, to the payment of secured creditors to the extent of the proceeds which arise from the sale of the security;
        (iv) Fourth, to the payment of claims on mechanics' liens;
        (v) Fifth, to the payment of escrow fees and the payment of claims for the prevailing brokerage fees for services rendered and claims for reasonable attorneys' fees for services rendered;
        (vi) Sixth, to the payment of claims for goods sold and delivered to the transferor for resale at this licensed premises and the payment of claims for services rendered, performed or supplied in connection with the operation of the licensed business; and to the payment of claims of a landlord, to the extent of proceeds on past-due rent;
        (vii) Seventh, to the payment of other claims which have been reduced to court-ordered judgments, including claims for support of a minor child;
        (viii) Eighth, to the payment of all other claims. The payment of these claims, if sufficient assets are not available for the claim in full, shall be pro rata.
    D. If the transferor licensee disputes any claim, you shall notify the claimant, and the amount of pro rate amount thereof shall be retained by the Escrow Holder for a period of twenty-five (25) days, and if not attached shall be paid to the transferor licensee. You shall make payment or distribution within a reasonable time after the completion of the transfer of license.

This Escrow Agreement is deemed to have been made in Los Angeles, CA and the place of performance is deemed to occur in Los Angeles, CA. Should any action be brought in connection with this Escrow Agreement, or among or between the parties to this Escrow Agreement pertaining to any matter in connection with this Escrow Agreement, venue is agreed to be proper only in Los Angeles, CA. This Escrow Agreement incorporates and contains the full and final expression of all of the terms of this Agreement, and supersedes all prior and contemporaneous oral understandings or agreements of the parties. This Agreement, and all documents requiring signature in connection with this Escrow Agreement, will be considered signed by a party when the signature of such party is delivered by mail, delivery, facsimile or electronic (i.e., e-mail) transmission. Any such signature transmission shall be treated in all respects as an original signature. © ABCEscrow.com All Rights Reserved. Proprietary & Confidential. May Not Be Duplicated Without Written Permission.

IN WITNESS WHEREOF, the parties have executed this document on _____,20_____.

BUYER

MAVERICK SALOON SY, LLC

By: _____

Print Name & Title_____

SELLER

JON TRAVIS BURNETT

**\*\*END OF INSTRUCTIONS\*\***

RECORDING REQUESTED BY

**ABC ESCROW COMPANY**

www.abcescrow.com
claims@abcescrow.com


WHEN RECORDED MAIL TO:

NAME
**ABC Escrow**

MAILING ADDRESS (Street number and name)
**2222 Damon Street**

| CITY | STATE | ZIP CODE |
|------|-------|----------|
| Los Angeles | CA | 90021 |

Escrow No. 16703-AK

**DO NOT WRITE IN THE SPACE ABOVE.** Government Code
Section 27361.6 reserves space above for exclusive use of County Recorder.

# NOTICE OF INTENDED TRANSFER OF RETAIL ALCOHOLIC BEVERAGE LICENSE UNDER SECTIONS 24073 AND 24074 CALIFORNIA BUSINESS AND PROFESSIONS CODE

*Read instructions before completing.*

1. LICENSEE(S) NAME(S) *(Seller)*
**JON TRAVIS BURNETT**


2. PREMISES ADDRESS TO WHICH LICENSE(S) HAS/HAVE BEEN ISSUED
**3687 SAGUNTO ST D, Santa Ynez, CA 93460**

3. LICENSEE'S MAILING ADDRESS *(if different)*

4. APPLICANT(S) NAME *(Transferee or Buyer)*
**MAVERICK SALOON SY, LLC**


5. PROPOSED BUSINESS ADDRESS *(if different than Item 2)*
**3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

6. MAILING ADDRESS OF APPLICANT
**291 NIETO AVE, LONG BEACH, CA 90803**

7. KIND OF LICENSE INTENDED TO BE TRANSFERRED
**ON-SALE GENERAL PUBLIC PREMISES** License No. **48-469062**

8. ESCROW HOLDER/GUARANTOR NAME
**ABC Escrow**

9. ESCROW HOLDER/GUARANTOR ADDRESS
**2222 Damon Street, Los Angeles, CA, 90021**

10. TOTAL CONSIDERATION TO BE PAID FOR THE BUSINESS AND LICENSE INCLUDING INVENTORY, WHETHER ACTUAL COST, ESTIMATED COST, OR A NOT-TO-EXCEED AMOUNT

| | | |
|---|---|---|
| CASH | $ | 20,000.00 |
| DEMAND NOTE | | 230,000.00 |
| PROMISSORY NOTES | | |
| TANGIBLE AND/OR INTANGIBLE PROPERTY | | |
| **TOTAL AMOUNT** | $ | 250,000.00 |

The parties agree that the consideration for the transfer of the business and the license(s) is to be paid only after the Department Of Alcoholic Beverage Control has approved the proposed transfer. The parties also agree and herein direct the above-named Escrow Holder to make payment or distribution within a reasonable time after the completion of the transfer of the license as Provided in Section 24074 of the California Business and Professions Code.

LICENSEE'S SIGNATURE *(Transferor or Seller)* **JON TRAVIS BURNETT**

DATE SIGNED

APPLICANT'S SIGNATURE *(Transferee or Buyer)* **MAVERICK SALOON SY, LLC**

DATE SIGNED

*One copy of this notice, CERTIFIED by the County Recorder, together with an additional copy must accompany the application for the transfer of the license.*

ABC-227 Reproduced by SMS (11/99)

State of California, Department of Alcoholic Beverage Control

RECORDING REQUESTED BY

**ABC ESCROW COMPANY**

www.abcescrow.com
claims@abcescrow.com


WHEN RECORDED MAIL TO:

NAME
**ABC Escrow**

MAILING ADDRESS (Street number and name)
**2222 Damon Street**

| CITY | STATE | ZIP CODE |
| --- | --- | --- |
| Los Angeles | CA | 90021 |

Escrow No. 16703-AK

DO NOT WRITE IN THE SPACE ABOVE.    Government Code
Section 27361.6 reserves space above for exclusive use of County Recorder.

# NOTICE OF INTENDED TRANSFER OF RETAIL ALCOHOLIC BEVERAGE LICENSE UNDER SECTIONS 24073 AND 24074 CALIFORNIA BUSINESS AND PROFESSIONS CODE

*Read instructions before completing.*

1. LICENSEE(S) NAME(S) (Seller)
**JON TRAVIS BURNETT**

2. PREMISES ADDRESS TO WHICH LICENSE(S) HAS/HAVE BEEN ISSUED
**3687 SAGUNTO ST D, Santa Ynez, CA 93460**

3. LICENSEE'S MAILING ADDRESS (if different)

4. APPLICANT(S) NAME (Transferee or Buyer)
**MAVERICK SALOON SY, LLC**

5. PROPOSED BUSINESS ADDRESS (if different than Item 2)
**3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

6. MAILING ADDRESS OF APPLICANT
**291 NIETO AVE, LONG BEACH, CA 90803**

7. KIND OF LICENSE INTENDED TO BE TRANSFERRED
**ON-SALE GENERAL PUBLIC PREMISES  License No.  48-469062**

8. ESCROW HOLDER/GUARANTOR NAME
**ABC Escrow**

9. ESCROW HOLDER/GUARANTOR ADDRESS
**2222 Damon Street, Los Angeles, CA, 90021**

10. TOTAL CONSIDERATION TO BE PAID FOR THE BUSINESS AND LICENSE INCLUDING INVENTORY, WHETHER ACTUAL COST, ESTIMATED COST, OR A NOT-TO-EXCEED AMOUNT

| | | |
| --- | --- | --- |
| CASH | $ | 20,000.00 |
| DEMAND NOTE | | 230,000.00 |
| PROMISSORY NOTES | | |
| TANGIBLE AND/OR INTANGIBLE PROPERTY | | |
| TOTAL AMOUNT | $ | 250,000.00 |

The parties agree that the consideration for the transfer of the business and the license(s) is to be paid only after the Department Of Alcoholic Beverage Control has approved the proposed transfer. The parties also agree and herein direct the above-named Escrow Holder to make payment or distribution within a reasonable time after the completion of the transfer of the license as Provided in Section 24074 of the California Business and Professions Code.

| LICENSEE'S SIGNATURE (Transferor or Seller) JON TRAVIS BURNETT | DATE SIGNED |
| --- | --- |
| APPLICANT'S SIGNATURE(Transferee or Buyer) MAVERICK SALOON SY, LLC | DATE SIGNED |

*One copy of this notice, __CERTIFIED__ by the County Recorder, together with an additional copy must accompany the application for the transfer of the license.*

ABC-227 Reproduced by SMS (11/99)

State of California, Department of Alcoholic Beverage Control

RECORDING REQUESTED BY

**ABC ESCROW COMPANY**

www.abcescrow.com
claims@abcescrow.com

WHEN RECORDED MAIL TO:

NAME
**ABC Escrow**

MAILING ADDRESS (Street number and name)
**2222 Damon Street**

| CITY | STATE | ZIP CODE |
|---|---|---|
| Los Angeles | CA | 90021 |

Escrow No. 16703-AK

DO NOT WRITE IN THE SPACE ABOVE.     Government Code
Section 27361.6 reserves space above for exclusive use of County Recorder.

# NOTICE OF INTENDED TRANSFER OF RETAIL ALCOHOLIC BEVERAGE LICENSE UNDER SECTIONS 24073 AND 24074 CALIFORNIA BUSINESS AND PROFESSIONS CODE

*Read instructions before completing.*

1. LICENSEE(S) NAME(S) *(Seller)*
**JON TRAVIS BURNETT**

2. PREMISES ADDRESS TO WHICH LICENSE(S) HAS/HAVE BEEN ISSUED
**3687 SAGUNTO ST D, Santa Ynez, CA 93460**

3. LICENSEE'S MAILING ADDRESS *(if different)*

4. APPLICANT(S) NAME *(Transferee or Buyer)*
**MAVERICK SALOON SY, LLC**

5. PROPOSED BUSINESS ADDRESS *(if different than Item 2)*
**3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

6. MAILING ADDRESS OF APPLICANT
**291 NIETO AVE, LONG BEACH, CA 90803**

7. KIND OF LICENSE INTENDED TO BE TRANSFERRED
**ON-SALE GENERAL PUBLIC PREMISES** License No. **48-469062**

8. ESCROW HOLDER/GUARANTOR NAME
**ABC Escrow**

9. ESCROW HOLDER/GUARANTOR ADDRESS
**2222 Damon Street, Los Angeles, CA, 90021**

10. TOTAL CONSIDERATION TO BE PAID FOR THE BUSINESS AND LICENSE INCLUDING INVENTORY, WHETHER ACTUAL COST, ESTIMATED COST, OR A NOT-TO-EXCEED AMOUNT

| | | |
|---|---|---|
| CASH | $ | 20,000.00 |
| DEMAND NOTE | | 230,000.00 |
| PROMISSORY NOTES | | |
| TANGIBLE AND/OR INTANGIBLE PROPERTY | | |
| TOTAL AMOUNT | $ | 250,000.00 |

The parties agree that the consideration for the transfer of the business and the license(s) is to be paid only after the Department Of Alcoholic Beverage Control has approved the proposed transfer. The parties also agree and herein direct the above-named Escrow Holder to make payment or distribution within a reasonable time after the completion of the transfer of the license as Provided in Section 24074 of the California Business and Professions Code.

| LICENSEE'S SIGNATURE *(Transferor or Seller)* JON TRAVIS BURNETT | DATE SIGNED |
|---|---|
| APPLICANT'S SIGNATURE *(Transferee or Buyer)* MAVERICK SALOON SY, LLC | DATE SIGNED |

One copy of this notice, **CERTIFIED** by the County Recorder, together with an additional copy must accompany the application for the transfer of the license.

ABC-227 Reproduced by SMS (11/99)

State of California, Department of Alcoholic Beverage Control

# DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL

August 16, 2017

Re:   Applicant:               **MAVERICK SALOON SY, LLC**

      Applicant Premises:      **3687 SAGUNTO ST D, SANTA YNEZ, CA 93460**

      Transferor:              **JON TRAVIS BURNETT**

      Transferor's License No. **48-469062**

      **ABC Escrow**           Escrow No. **16703-AK**

Gentlemen:

This is directed to the Department at the request of the undersigned applicant(s) and transferor(s) that the subject license applied for under the provisions of Section 24044 of the Alcoholic Beverage Control Act be issued pursuant to Rule 64(b) of the Department's Rules, and that notice or advisement thereof be directed to:

**ABC Escrow**
**2222 Damon Street**
**Los Angeles, CA, 90021**

The applicant acknowledge that following the transfer of the license it is his responsibility, as licensee to:
  a. Place the license in use at his approved premises on or before the approved expected completion date of his construction, or such extended date, if any, as the Department, in its discretion, may grant.
  b. Pay to the Department any annual renewal fee when due whether or not he has placed the license in use at said premises.
  c. That in the event he fails, without good cause, to place the license in use as intended a subsequent transfer of the license will be allowed only at the discretion of the department.

In making this petition to have the license issued, the applicant further states that he is fully prepared to effect the completion of this premises and the use of the license not later than the approved expected completion date, or such approved extended date, and agrees that is anything beyond his control prevents him from doing so, he will not enter into any agreement to sell the license for an amount greater than he paid for it.

MAVERICK SALOON SY, LLC                    JON TRAVIS BURNETT

By: _____

State of California
# LICENSE TRANSFER REQUEST *("SIGN OFF")*

Department of Alcoholic Beverage Control

| | |
|---|---|
| • **This form is to be signed by transferors only.**<br>• **Read instructions before completing.**<br>• **All signatures must be notarized in accordance with laws of the State where signed.** | 1. DISTRICT OFFICE |

2. LICENSE NUMBER

48-469062

3. TRANSACTION TYPE

☐ Exchange ☐ Premise to Premise Transfer

☑ Person to Person Transfer ☐ Other

4. LICENSEE'S NAME *(Transferor/Seller)*

JON TRAVIS BURNETT

5. APPLICANT'S NAME *(transferee/Buyer)*

MAVERICK SALOON SY, LLC

6. EXISTING PREMISES ADDRESS

3687 SAGUNTO ST D, SANTA YNEZ, CA 93460

7. LICENSEE'S MAILING ADDRESS *(Transferor/Seller)*

8. LICENSEE'S PHONE NUMBER

(        )

*I hereby request surrender of my license under Section 24045.5(b) of the ABC Act so that a Temporary Permit may be issued to the transferee.*

9. SIGNATURE OF TRANSFEROR/SELLER FOR TEMPORARY PERMIT *(only one signature required)*

**X**

DATE SIGNED

| 10. RENEWAL DUE DATE | 11. SURRENDER DATE | 12. TEMP. EFFECTIVE DATE | 13. TEMP. EXPIRATION DATE |
|---|---|---|---|
| | | | |

## TRANSFEROR'S CERTIFICATION

Under penalty of perjury, each person whose signature appears below, certifies and says: (1) He is the licensee named in the foregoing transfer application, duly authorized to make this transfer application; (2) that he hereby makes application to surrender all interest in the license(s) described above and to transfer same to the applicant and/or location indicated on the upper portion of this form, if such transfer is approved by the Director; (3) that the transfer application or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety days preceding the day on which the transfer application is filed with the Department or to gain or establish a preference to or for any creditor of transferor or to defraud or injure any creditor of transferor; (4) that the transfer application may be withdrawn by either the applicant or the licensee with no resulting liability to the Department.

### SOLE OWNER

14. SOLE OWNER'S PRINTED NAME *(Last, first, middle)*

BURNETT, JON TRAVIS

SIGNATURE

**X**

DATE SIGNED

### PARTNERSHIP/LIMITED PARTNERSHIP *(signatures of general partners only)*

15. PARTNER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

PARTNER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

PARTNER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

### CORPORATION

16. CORPORATE OFFICER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

TITLE

☐ President ☐ Vice President ☐ Chairman of the Board

CORPORATE OFFICER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

TITLE

☐ Secretary ☐ Assistant Secretary ☐ Chief Financial Officer ☐ Assistant Treasurer

### LIMITED LIABILITY COMPANY

17. The limited liability company is member-run    ☐ Yes ☐ No    (If no, complete Item #18 below)

18. NAME OF DESIGNATED LLC MANAGER, MANAGING MEMBER OR DESIGNATED OFFICER *(Last, first, middle)*

ABC INITIALS/DATE *(ABC use only)*

19. LLC MEMBER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

LLC MEMBER'S PRINTED NAME *(Last, first, middle)*

SIGNATURE **X**

DATE SIGNED

ABC-211-A (9/01)      **"SIGN OFF"**

State of California
# LICENSE TRANSFER REQUEST *("SIGN OFF")*

Department of Alcoholic Beverage Control

| • **This form is to be signed by transferors only.**<br>• **Read instructions before completing.**<br>• **All signatures must be notarized in accordance with laws of the State where signed.** | 1. DISTRICT OFFICE | 2. LICENSE NUMBER<br>48-469062 |
|---|---|---|
| | 3. TRANSACTION TYPE<br>☐ Exchange<br>☑ Person to Person Transfer | ☐ Premise to Premise Transfer<br>☐ Other |

| 4. LICENSEE'S NAME *(Transferor/Seller)*<br>JON TRAVIS BURNETT | 5. APPLICANT'S NAME *(transferee/Buyer)*<br>MAVERICK SALOON SY, LLC |
|---|---|

6. EXISTING PREMISES ADDRESS

3687 SAGUNTO ST D, SANTA YNEZ, CA 93460

| 7. LICENSEE'S MAILING ADDRESS *(Transferor/Seller)* | 8. LICENSEE'S PHONE NUMBER<br>(    ) |
|---|---|

*I hereby request surrender of my license under Section 24045.5(b) of the ABC Act so that a Temporary Permit may be issued to the transferee.*

| 9. SIGNATURE OF TRANSFEROR/SELLER FOR TEMPORARY PERMIT *(only one signature required)*<br>X | DATE SIGNED |
|---|---|

| 10. RENEWAL DUE DATE | 11. SURRENDER DATE | 12. TEMP. EFFECTIVE DATE | 13. TEMP. EXPIRATION DATE |
|---|---|---|---|

## TRANSFEROR'S CERTIFICATION

Under penalty of perjury, each person whose signature appears below, certifies and says: (1) He is the licensee named in the foregoing transfer application, duly authorized to make this transfer application; (2) that he hereby makes application to surrender all interest in the license(s) described above and to transfer same to the applicant and/or location indicated on the upper portion of this form, if such transfer is approved by the Director; (3) that the transfer application or proposed transfer is not made to satisfy the payment of a loan or to fulfill an agreement entered into more than ninety days preceding the day on which the transfer application is filed with the Department or to gain an establish a preference for or for any creditor of transferor or to defraud or injure any creditor of transferor; (4) that the transfer application may be withdrawn by either the applicant or the licensee with no resulting liability to the Department.

## SOLE OWNER

| 14. SOLE OWNER'S PRINTED NAME *(Last, first, middle)*<br>BURNETT, JON TRAVIS | SIGNATURE<br>X | DATE SIGNED |
|---|---|---|

## PARTNERSHIP/LIMITED PARTNERSHIP *(signatures of general partners only)*

| 15. PARTNER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |
|---|---|---|
| PARTNER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |
| PARTNER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |

## CORPORATION

| 16. CORPORATE OFFICER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |
|---|---|---|

TITLE
☐ President ☐ Vice President ☐ Chairman of the Board

| CORPORATE OFFICER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |
|---|---|---|

TITLE
☐ Secretary ☐ Assistant Secretary ☐ Chief Financial Officer ☐ Assistant Treasurer

## LIMITED LIABILITY COMPANY

| 17. The limited liability company is member-run | ☐ Yes ☐ No | (If no, complete Item #18 below) |
|---|---|---|

| 18. NAME OF DESIGNATED LLC MANAGER, MANAGING MEMBER OR DESIGNATED OFFICER *(Last, first, middle)* | ABC INITIALS/DATE *(ABC use only)* |
|---|---|

| 19. LLC MEMBER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |
|---|---|---|
| LLC MEMBER'S PRINTED NAME *(Last, first, middle)* | SIGNATURE<br>X | DATE SIGNED |

ABC-211-A (9/01)                    *"SIGN OFF"*

EXHIBIT "2"

# AGREEMENT
## TO
## RESCIND PURCHASE AGREEMENT

**THIS AGREEMENT TO RESCIND PURCHASE AGREEMENT** (**"Agreement"**) is dated August 22, 2017, for reference purposes only, by and among Jon Travis Burnett (**"Burnett"**) and Greg Morris (**"Morris"**), who may be referred to herein, singularly, as the **"Party"** or, collectively as the **"Parties,"** with respect to the following facts:

## RECITALS

A.    Burnett is licensed by the California Department of Alcoholic Beverage Control License No. 469062 (the **"ABC License"**) at 3687 Sagunto Street, Santa Ynez, CA 93460.

B.    On or about August 1, 2017, Morris and Burnett entered into the ABC License Purchase Agreement (the **"ABC License Purchase Agreement"**) whereby Burnett promised to convey the ABC License to Morris. The purchase price was One Hundred Thousand Dollars ($100,000.00).

C.    Morris and Burnett desire to cancel the ABC License Purchase Agreement and have no further obligation or liability thereunder, as provided in this Agreement.

## AGREEMENT

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Morris and Burnett agree as follows:

1. RESCISSION.    Burnett and Morris hereby mutually agree to cancel the ABC License Purchase Agreement.

2. RELEASE.    Burnett and Morris (i) mutually release each other from all obligation to buy or sell the ABC License under the ABC License Purchase Agreement, and from all claims, actions and demands that each may have against each other by reason of the ABC License Purchase Agreement; and, (ii) intent that all rights and obligations arising out of the ABC License Purchase Agreement are hereby null, void, and of no further force or effect whatsoever.

**(Signatures on following page.)**

1

AGREEMENT TO RESCIND PURCHASE AGREEMENT

**BURNETT:**

Jon Travis Burnett

Date

**MORRIS:**

Greg Morris

Date

## List of Exhibits:

1. Exhibit A – Rescission of ABC License Purchase Agreement

EXHIBIT "3"

# AGREEMENT TO RESCIND PURCHASE AGREEMENT AND ABANDON TRADEMARK APPLICATION

**THIS AGREEMENT TO RESCIND PURCHASE AGREEMENT AND ABANDON TRADEMARK APPLICATION ("Agreement")** is dated August 24, 2017, for reference purposes only, by and among Greg Morris (**"Morris"**) and Demetrios Loizides (**"Loizides"**), who may be referred to herein, singularly, as the **"Party"** or, collectively as the **"Parties,"** with respect to the following facts:

## RECITALS

A.      Jon Travis Burnett (**"Burnett"**) is licensed by the California Department of Alcoholic Beverage Control License No. 469062 (the **"ABC License"**) at 3687 Sagunto Street, Santa Ynez, CA 93460.

B.      Burnett Family Farms, LLC (**"Burnett Family Farms"**) is engaged in the business of owning and operating a restaurant and bar located at Unit "D" and "E" of 3687 Sagunto Street, Santa Ynez, CA, 93460 known as the "Maverick Saloon". Burnett is the Managing Member of Burnett Family Farms.

C.      Burnett Family Farms filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the **"Bankruptcy Court"**), Case No. 9:17-bk-11154-DS (the **"Case"**), in which Case, Burnett Family Farms is operating as a debtor and debtor in possession.

D.      On or about August 1, 2017, Morris and Burnett entered into the ABC License Purchase Agreement (the "ABC License Purchase Agreement") whereby Burnett promised to convey the ABC License to Morris. The purchase price was One Hundred Thousand Dollars ($100,000.00).

E.      On or about August 9, 2017, Morris filed the trademark application known as Serial Number 87561345 for the word mark, "Maverick Saloon Santa Ynez California" (the **"Trademark Application"**).

F.      Loizides has made an offer to Burnett to purchase the ABC License.

G.      Maverick Saloon SY, LLC has made an offer to Burnett Family Farms to purchase the Business. Loizides is the Manager of Maverick Saloon SY, LLC.

H.      Morris has agreed to enter into an agreement to rescind the ABC License Purchase Agreement and abandon the Trademark Application, as provided in this Agreement.

1

## AGREEMENT

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Loizides and Morris agree as follows:

1. RESCISSION. Within three (3) business days of the full execution of this Agreement, Morris shall execute the Rescission of ABC License Purchase Agreement, which is attached hereto as **<u>Exhibit A</u>**, and shall promptly deliver the executed Rescission of ABC License Purchase Agreement to Loizides' counsel. The Rescission of ABC License Purchase Agreement shall be held in escrow by Loizides' counsel and shall not be released or effective until the payment of consideration in Paragraph 3 is received by Morris.

2. TRADEMARK ABANDONMENT. Within three (3) business days of the full execution of this Agreement, Morris shall file the necessary and appropriate documents to permanently abandon the Trademark Application and shall promptly provide proof of the same to Loizides or his counsel. Morris shall not pursue any trademark that includes the words "Maverick Saloon". Morris promises not to file, directly or indirectly, any type of objection when Loizides seeks to trademark the words "Maverick Saloon" or such similar mark.

3. PAYMENT OF CONSIDERATION. Within three (3) business days of Loizides' receipt of the fully executed Rescission of ABC License Purchase Agreement and proof of the abandonment of the Trademark Application, Loizides shall pay Morris the sum of Twenty Five Thousand Dollars ($25,000.00) via wire transfer.

4. FURTHER ASSURANCES. The Parties agree to execute, deliver, and cooperate on request such other documents or instruments as may be reasonably necessary or useful in carrying-out the intent of the Parties in entering into this Agreement; provided, however, Morris shall not be required to incur any costs or expenses in connection with such cooperation.

5. NOTICES. The address for purposes of notice of the following Parties regarding the Agreement is as follows:

| For Morris: | For Loizides: |
|---|---|
| Karl E. Kuhn<br>Sage Law Partners<br>9696 Culver Blvd, Ste 301<br>Culver City, CA 90232 | Travis C. Logue<br>Rogers, Sheffield & Campbell LLP<br>150 East Carrillo Street<br>Santa Barbara, CA 93101 |

6. SUCCESSORS AND ASSIGNS. This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

2

**AGREEMENT TO RESCIND PURCHASE AGREEMENT AND
ABANDON TRADEMARK APPLICATION**

7. <u>COUNTERPARTS</u>. This Agreement may be executed and delivered via facsimile or electronic mail in any number of counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute but one and the same agreement.

      **IN WITNESS WHEREOF**, Loizides and Morris have executed this Agreement as of the day and year below written.

**LOIZIDES:**

_Demetrios Loizides_            _8-29-17_
Demetrios Loizides               Date
       By David Salgado
       His Attorney in Fact

**MORRIS:**

_____      _____
Greg Morris                  Date


<u>**List of Exhibits:**</u>

1. Exhibit A –  Rescission of ABC License Purchase Agreement

**AGREEMENT TO RESCIND PURCHASE AGREEMENT AND
ABANDON TRADEMARK APPLICATION**

EXHIBIT "4"

| Uniform Commercial Code Report |
|---|

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Source Information**

| | |
|---|---|
| Information Current Through: | 08/25/2017 |
| Database Last Updated: | 08/25/2017 |
| Update Frequency: | DAILY |
| Current Date: | 08/25/2017 |
| Source: | CA SECRETARY OF STATE |

**Filing Information**

| | |
|---|---|
| Filing Number: | 107236191454 |
| Filing Date: | 06/23/2010 |
| Expiration Date: | 07/23/2020 |
| Total Number of Pages: | 1 |
| Filing Type: | FEDERAL TAX LIEN |

**Debtor Information**

| | |
|---|---|
| Debtor(s): | BURNETT FAMILY FARMS LLC<br>PO BOX 549<br>SANTA YNEZ, CA 93460-0549 |
| Debtor(s): | BURNETT FAMILY CHRISTMAS TREES<br>PO BOX 549<br>SANTA YNEZ, CA 93460-0549 |

**Secured Party or Creditor Information**

| | |
|---|---|
| Secured Party(s): | IRS/OHIO<br>P.O. BOX 145595<br>CINCINNATI, OH 45250-5595 |

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

*Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.*

End of Document
© 2017 Thomson Reuters. No claim to original U.S. Government Works.

| Uniform Commercial Code Report |
|---|

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

## Source Information

| Information Current Through: | 08/25/2017 |
|---|---|
| Database Last Updated: | 08/25/2017 |
| Update Frequency: | DAILY |
| Current Date: | 08/25/2017 |
| Source: | CA SECRETARY OF STATE |

## Filing Information

| Filing Number: | 097203154748 |
|---|---|
| Filing Date: | 07/20/2009 |
| Expiration Date: | 07/20/2019 |
| Total Number of Pages: | 2 |
| Filing Type: | STATE TAX LIEN |

## Debtor Information

| Debtor(s): | MARK BURNETT<br>250 INDUSTRIAL WAY STE G<br>BUELLTON, CA 93427-9505 |
|---|---|
| Debtor(s): | TRAVIS BURNETT<br>250 INDUSTRIAL WAY STE G<br>BUELLTON, CA 93427-9505 |
| Debtor(s): | BURNETT FAMILY FARMS LLC<br>250 INDUSTRIAL WAY STE G<br>BUELLTON, CA 93427-9505 |

## Secured Party or Creditor Information

| Secured Party(s): | EMPLOYMENT DEVELOPMENT DEPARTMENT<br>PO BOX 826880<br>SACRAMENTO, CA 94280 |
|---|---|

## Related Filing Information

| Related Filing Number: | 0972062225 |
|---|---|
| Related Filing Date: | 08/19/2009 |
| Related Filing Time: | 1700 |
| Related Filing Type: | ERRONEOUS TERMINATION |

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

## Order Documents

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

*Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.*

EXHIBIT "5"

Debtor name    Burnett Family Farms, LLC

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    _____

☐ Check if this is an
     amended filing

# Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims       12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

     ☐ No. Go to Part 2.

     ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| **2.1** Priority creditor's name and mailing address<br>Board of Equalization<br>Special Oper. Bankr. Team MIC 74<br>P.O. Box 942879<br>Sacramento, CA 94279-0074 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | $20,023.32 | $20,023.32 |
| Date or dates debt was incurred<br>2005-2006 | Basis for the claim:<br>Sales and Use Taxes | | |
| Last 4 digits of account number <u>2834</u> | Is the claim subject to offset? | | |
| Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |
| **2.2** Priority creditor's name and mailing address<br>Board of Equalization<br>Special Oper. Bankr. Team MIC 74<br>P.O. Box 942879<br>Sacramento, CA 94279-0074 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | $1,334.88 | $1,334.88 |
| Date or dates debt was incurred<br>2010 | Basis for the claim:<br>Sales and Use Taxes | | |
| Last 4 digits of account number <u>2834</u> | Is the claim subject to offset? | | |
| Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $463,599.91 | $463,599.91 |
|-----|---|---|---|---|
| | Board of Equalization<br>Special Oper. Bankr. Team MIC 74<br>P.O. Box 942879<br>Sacramento, CA 94279-0074 | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred<br>2011-2017 | Basis for the claim:<br>Sales and Use Taxes | | |
| | Last 4 digits of account number <u>2834</u><br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (<u>8</u>) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $16,380.28 | $16,380.28 |
|-----|---|---|---|---|
| | California Franchise Tax Board<br>PO Box 1720<br>MS: A-260<br>Rancho Cordova, CA 95741 | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred<br>2005-2008 | Basis for the claim:<br>State Income Taxes | | |
| | Last 4 digits of account number <u>2868</u><br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (<u>8</u>) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $23,459.15 | $23,459.15 |
|-----|---|---|---|---|
| | Employment Development Dept<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred<br>2007-2010 | Basis for the claim:<br>Payroll Taxes | | |
| | Last 4 digits of account number <u>2868</u><br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (<u>8</u>) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $128,238.16 | $128,238.16 |
|-----|---|---|---|---|
| | Internal Revenue Service<br>Bankruptcies<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred<br>2007-2010 | Basis for the claim:<br>Payroll Taxes | | |
| | Last 4 digits of account number <u>2868</u><br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (<u>8</u>) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| Debtor | Burnett Family Farms, LLC | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.1 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $105,500.00 |
|---|---|---|---|

3687 Sagunto Street, LLC
c/o Gombiner & Company
458 N Doheny Dr. #393
West Hollywood, CA 90069

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Date(s) debt was incurred** 07/01/06

**Basis for the claim:** Nonresidential leased premises located at 3687 Sagunto Street, Santa Ynez, CA

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.2 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $2,972.84 |
|---|---|---|---|

American Society of Composers, etc.
P.O. Box 331608-7515
Nashville, TN 37203-9998

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Date(s) debt was incurred** 2009

**Basis for the claim:** License Fees

**Last 4 digits of account number** 9881

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.3 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $5,709.49 |
|---|---|---|---|

Broadcast Music, Inc.
10 Music Square East
Nashville, TN 37203-4399

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Date(s) debt was incurred** 2011

**Basis for the claim:** Music Services

**Last 4 digits of account number** 2257

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.4 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $15,059.02 |
|---|---|---|---|

Charles G. Logue
142 E. Carillo Street
Santa Barbara, CA 93101

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Date(s) debt was incurred** 2011

**Basis for the claim:** Business Loan

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.5 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $826.44 |
|---|---|---|---|

Johnson's Jewel Box
436-B Alisal Road
Solvang, CA 93463

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Date(s) debt was incurred** 2011

**Basis for the claim:** Gemologist Services

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.6 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $5,000.00 |
|---|---|---|---|

KLM Tree Farm
16725 Marlu Lane SW
Rochester, WA 98579

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Date(s) debt was incurred** 2009

**Basis for the claim:** Christmas Tree Farm Vendor

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | $77,000.00 |
|---|---|---|---|

Marianne Burgett
P.O. Box 2387
Florence, OR 97439

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Date(s) debt was incurred** 2003

**Basis for the claim:** Business Loan

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $8,392.97 |

**3.8**

Nonpriority creditor's name and mailing address

Ringle & Sons Tree Farms
P.O. Box 307
Aurora, OR 97002

Date(s) debt was incurred __2009__

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __Christmas Tree Farm Vendor__

Is the claim subject to offset? ■ No ☐ Yes

$8,392.97

---

**3.9**

Nonpriority creditor's name and mailing address

SESAC
6100 Wilshire Blvd.
Suite 700
Los Angeles, CA 90048

Date(s) debt was incurred __2010-2012__

Last 4 digits of account number __3786__

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __Mechanical Music Fees__

Is the claim subject to offset? ■ No ☐ Yes

$1,787.00

---

**3.10**

Nonpriority creditor's name and mailing address

Sherry Musgrove
3995 Roblar
Santa Ynez, CA 93460

Date(s) debt was incurred __2008__

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __Business Loan__

Is the claim subject to offset? ■ No ☐ Yes

$11,000.00

---

**3.11**

Nonpriority creditor's name and mailing address

TEK POS Systems, Inc.
121 East Mason Street, Unit #A
Santa Barbara, CA 93101

Date(s) debt was incurred __2011__

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __Breach of Contract - Case No. 1383501__

Is the claim subject to offset? ■ No ☐ Yes

$5,036.00

---

## Part 3: List Others to Be Notified About Unsecured Claims

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | Internal Revenue Service<br>1332 Anacapa St, Ste 101<br>Santa Barbara, CA 93101 | Line __2.6__<br><br>☐ Not listed. Explain ____ | _ |
| 4.2 | Leo A. Schwarz, Esq.<br>Law Offices of Leo A. Schwarz<br>5655 Lindero Canyon Road<br>Suite 723<br>Thousand Oaks, CA 91362 | Line __3.1__<br><br>☐ Not listed. Explain ____ | _ |

---

## Part 4: Total Amounts of the Priority and Nonpriority Unsecured Claims

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ 653,035.70 |
| 5b. Total claims from Part 2 | 5b. + | $ 238,283.76 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ 891,319.46 |

| In re<br>Burnett Family Farms, LLC,<br><br>Debtor(s) | Chapter 11<br><br>Bankr. Case No. 9:17-bk-11154-DS |
|---|---|

**NOTE**: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Law Offices of Louis J. Esbin
25129 The Old Road, Suite 114, Stevenson Ranch, CA 91381-2273

A true and correct copy of the foregoing document described  **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DEBTOR IN POSSESSION TO SELL SUBSTANTIALLY ALL OF THE PERSONAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS (INCLUDING SUCCESSOR LIABILITY CLAIMS), WITH LIENS TO ATTACH TO PROCEEDS; FOR A FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. §363(m); AND FOR A WAIVER OF BANKRUPTCY RULE 6004(h); OVERBID PROCEDURE; MOTION TO PAY ADMINISTRATIVE RENT;  MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS  JON TRAVIS BURNETT, GREG MORRIS AND DEMETRIOS LOIZIDES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 2, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Louis J. Esbin (esbinlaw@sbcglobal.net)

US Trustee: Brian D Fittipaldi (brian.fittipaldi@usdoj.gov )

Sandra McBeth (donna@mcbethlegal.com)

☐  Service information continued on attached page

**2.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On September 2, 2017,  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Deborah J. Saltzman, Bankruptcy Judge
255 E. Temple Street, Suite 1634
Los Angeles, California 90012

Burnett Family Farms, LLC
1559 Edison Street
Santa Ynez, CA 93460

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 2, 2017, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Joseph M. Sholder (sholder@g-tlaw.com)
Travis Logue (Travis@rogerssheffield.com)

Karl Kuhn (kkuhn@sagelawpartners.com)
Leo A. Schwarz (Leo@leolaws.com)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 2, 2017 | Linda Dekker | /s/ Linda Dekker |
|---|---|---|
| Date | Type Name | Signature |

## 2.  Mail Delivery

**Taxing Authorities**

| | | |
|---|---|---|
| Internal Revenue Service<br>Bankruptcies<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | <u>Per Claim, Authorized Agent</u><br>Internal Revenue Service<br>Attn. Jennifer Asual BK Specialist<br>Insolvency Grp 4<br>55 So. Market St., M/S HQ5430<br>San Jose, CA 95113 | California Dept. Corporations<br>320 West 4th Street, Suite 750<br>Los Angeles, CA 90013-2344 |
| Board of Equalization<br>Special Oper. Bankr. Team MIC 74<br>P.O. Box 942879<br>Sacramento, CA 94279-0074 | Employment Development Dept<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | |
| Franchise Tax Board<br>Bankruptcy Section, MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Franchise Tax Board<br>P.O. Box 1720<br>MS: A-260<br>Rancho Cordova, CA 95741 | |

**Unsecured Creditors**

| | | |
|---|---|---|
| 3687 Sagunto Street, LLC<br>c/o Gombiner & Company<br>458 N Doheny Dr. #393<br>West Hollywood, CA 90069 | American Society of Composers, etc.<br>P.O. Box 331608-7515<br>Nashville, TN 37203-9998 | Broadcast Music, Inc.<br>10 Music Square East<br>Nashville, TN 37203-4399 |
| Charles G. Logue<br>142 E. Carillo Street<br>Santa Barbara, CA 93101 | Johnson's Jewel Box<br>436-B Alisal Road<br>Solvang, CA 93463 | KLM Tree Farm<br>16725 Marlu Lane SW<br>Rochester, WA 98579 |
| Marianne Burgett<br>P.O. Box 2387<br>Florence, OR 97439 | Ringle & Sons Tree Farms<br>P.O. Box 307<br>Aurora, OR 97002 | SESAC<br>6100 Wilshire Blvd., Ste. 700<br>Los Angeles, CA 90048 |
| Sherry Musgrove<br>3995 Roblar<br>Santa Ynez, CA 93460 | TEK POS Systems, Inc.<br>121 East Mason Street, Unit #A<br>Santa Barbara, CA 93101 | Jon Travis Burnett<br>1559 Edison Street<br>Santa Ynez, CA 93460 |
| Leo A. Schwarz, Esq.<br>Law Offices of Leo A. Schwarz<br>5655 Lindero Canyon Road<br>Suite 723<br>Thousand Oaks, CA 91362 | | |